(82 South. 407)

No. 23434.

STATE v. PAIRS.

(May 5, 1919. On Rehearing, June 30, 1919.)

*(Syllabus by Editorial Staff.)*

1. HOMICIDE ⟷192, 199 — EVIDENCE — THREATS.

In a prosecution for murder, testimony that deceased had previously threatened to kill defendant *held* admissible to corroborate evidence for defendant that deceased provoked the difficulty, and as relevant to defendant's plea of not guilty of murder, and as tending to show the homicide was committed in heat of passion.

2. CRIMINAL LAW ⟷737(1) — QUESTION OF FACT—DECISION BY COURT—CONSTITUTION.

For the district court to withhold from the jurors and decide for them a question of fact on which depends the guilt or innocence of defendant in a criminal case is a violation of Const. art. 179, providing that the jury shall be the judges of the facts pertaining to guilt or innocence.

3. CRIMINAL LAW ⟷1158(1)—QUESTIONS OF FACT—DECISION BY SUPREME COURT.

For the Supreme Court to decide questions of fact on which depend the guilt or innocence of defendant in a criminal case is a violation of Const. art. 85, confining the jurisdiction of the court in criminal cases to questions of law.

Monroe, C. J., dissenting on rehearing.

Appeal from Fifteenth Judicial District Court, Parish of Allen; Winston Overton, Judge.

Lucius Pairs was convicted of murder, and he appeals. Verdict and sentence annulled, and case remanded.

Williams & Reed, for appellant.

A. V. Coco, Atty. Gen., and J. Sheldon Toomer, Dist. Atty., and Griffin T. Hawkins, Jr., Asst. Dist. Atty., both of Lake Charles (Thomas W. Robertson, of New Orleans, of counsel), for the State.

O'NIELL, J. The defendant was convicted of the murder of one Dan Kibler and sentenced to life imprisonment. He pleaded self-defense, and relies, for a reversal of the verdict and sentence, upon a bill of exception taken to the refusal of the judge to allow him to prove that Kibler had previously threatened to kill him.

[1] The objection to the proof that the alleged threats had been made and communicated to defendant before the fatal difficulty was that the evidence submitted to the jury did not show affirmatively that Kibler was attempting to carry out the alleged

threats when defendant shot and killed him.

The evidence on the question, whether Kibler made a hostile demonstration, was reduced to writing and is attached to the bill of exception, according to the provisions of the Act No. 113 of 1896. It consists of the testimony of the defendant himself and of two witnesses for the state. The three witnesses agree upon the following details: Defendant was in his home, in a turpentine camp, attending to the loading of his household effects upon a wagon, preparing to move away from the camp. Kibler came upon the scene armed with a single-barrel shotgun. He had arrived at the gate when defendant stepped out upon his porch, armed also with a single-barrel shotgun, and said to Kibler, "Throw down that gun." Kibler was then standing at the gate, 30 feet away, facing defendant and holding his shotgun across the front of his body, resting the barrel upon his arm and having his hand on the stock and lock of the gun. He did not throw down the gun, but exchanged shots with defendant.

The important question on which the witnesses disagreed is as to who fired the first shot. Defendant testified that Kibler fired the first shot. The two witnesses for the state testified that defendant fired the first shot, and that the second and third shot, fired by defendant and Kibler, respectively, were so nearly simultaneous that they could hardly be distinguished.

Defendant's version of the difficulty is as follows: He was in his house when he saw Kibler approaching with the shotgun. The windows and doors were open because he was moving out of the house. Fearing that Kibler had come to execute his threats to kill him, and feeling unprotected in the open house, he stepped out upon the porch and demanded that Kibler throw down his gun. The latter instantly fired at defendant, but missed him. Defendant then stepped down into the yard and shot Kibler while he was attempting to reload his gun.

The version given of the difficulty by the two witnesses for the state is as follows: Kibler had stopped at defendant's gate and was talking to some men when defendant came to the door. He fired at Kibler immediately upon demanding that he throw down his gun and before Kibler raised his gun to fire. Kibler stepped back, saying, "What do you mean, boy?" Defendant then reloaded his gun and fired again, and, almost simultaneously, Kibler fired at defendant. The latter then threw down his gun and, drawing a revolver, fired three shots. Kibler was then retreating, but facing defendant, who was advancing upon Kibler, the distance between them remaining about 30 feet during the shooting. Kibler fell at the third and last shot from defendant's pistol. There were shot wounds on Kibler's hands and shot marks on the lock and stock of his gun, which contained an empty shell.

In his statement per curiam, the district judge says that, though the testimony of the defendant was entitled to as much consideration as was that of either of the two witnesses for the state, there was a preponderance of evidence that Kibler did not make a hostile demonstration towards defendant until the latter shot at him. The judge expressed the opinion that Kibler's coming to defendant's house armed with a shotgun was not a hostile demonstration, even though Kibler had threatened to kill defendant; and that the proof of that demonstration on Kibler's part was not a sufficient basis for the introduction of evidence of his previous threats to kill defendant.

Our opinion, to the contrary, is that the jury might well have considered Kibler's approaching defendant's house armed with a shotgun as a hostile demonstration, if defendant had been allowed to prove that Kibler had already threatened to kill him.

On the other hand, withholding from the jury the knowledge that Kibler had threatened defendant's life left the false impression that the two men were on terms of friendship. Hence the jury was left to presume that Kibler's visit was a friendly one, notwithstanding his readiness with his shotgun.

In fact, our opinion is that the question, whether Kibler's approaching defendant's house armed with a shotgun was a hostile demonstration, under the circumstances, depended upon whether there had been any hostile threat on his part, or previous quarrel between him and the defendant. See State v. Rideau, 116 La. 245, 40 South. 691.

Even though proof of Kibler's previous threats to kill defendant might not have convinced the jury that defendant was justified in the belief that his life was in danger when Kibler approached with his shotgun, the proof would have been very apt to convince the jury, under the circumstances of this case, that the homicide was committed in the heat of passion, without malice aforethought. In other words, even if we thought that proof of previous threats, under the circumstances of this case, was not relevant to defendant's plea of self-defense, we would consider it relevant to his plea of not guilty of murder. Though the evidence that was withheld from the jury might not have justified the homicide, it might well have mitigated the crime, in the mind of the jury.

When the defendant in a prosecution for murder or manslaughter pleads self-defense, and the evidence leaves a doubt as to whether he or the deceased was the aggressor in the fatal difficulty, evidence of previous threats on the part of the deceased is admissible to corroborate the evidence for defendant that the deceased provoked the difficulty. In fact, proof of previous threats on the part of the deceased, in such case, is not pertinent to any other question than the question as to who was the aggressor in the fatal difficulty; because threats in themselves do not justify killing the threatener.

The question whether the defendant or the deceased was the aggressor in the fatal difficulty is a question of fact; and, under the plea of self-defense, as in this case, it is the only question of fact upon which depends the guilt or innocence of the party accused.

By article 85 of the Constitution, the jurisdiction of this court, in criminal cases, is confined to questions of law. That does not mean that we shall not decide questions of fact on which the trial judge has based a ruling, and which do not pertain to the question of guilt or innocence of the party accused. The Legislature has, by Act No. 113 of 1896, provided a method of bringing up for our consideration the evidence on such questions of fact; and, though that statute is now 23 years old and has been considered and interpreted in our decisions more than 30 times, it has never been considered violative of article 85 of the Constitution, or of article 179, which provides that the jury shall be the judges of the facts pertaining to the question of guilt or innocence, in criminal cases.

[2, 3] For the district judge to withhold from the jurors, and decide for them, a question of fact on which depends the guilt or innocence of the defendant in a criminal case, is a violation of article 179 of the Constitution. And for the Supreme Court to decide such a question is a violation of article 85 of the Constitution. Inasmuch as proof of previous threats on the part of the deceased is not admissible for any other purpose than to show who was the aggressor in the fatal difficulty, when that question is in doubt, it is a begging of the question to say that proof of such threats is not admissible until the defendant has proven affirmatively that the deceased was the aggressor, and that he

(defendant) acted in self-defense. The effect of such ruling would be to deprive the defendant of the benefit of proof of previous threats on the part of the deceased, in any and every case where self-defense is pleaded in justification of a homicide. The defendant in such case, after proving affirmatively that he was justified under the law of self-defense, would have no need of the proof of previous threats on the part of the deceased.

Rice on Evidence (Criminal) vol. 3, p. 575, § 362, in the chapter entitled "Evidence of Self-Defense," states the doctrine thus:

"Threats of violence by the deceased against the accused, though not communicated to the latter, are admissible as evidence where there is any doubt as to who began the encounter. They tend to show that it was the intention of the deceased at the time of the meeting to attack the accused, and hence tend to prove that the former brought on the conflict, and are relevant evidence. If all the evidence is to the effect that the defendant was the aggressor, it is not admissible."

To the same effect is Wharton's Crim. Ev. (10th Ed.) vol. 2, § 912. There being some confusion in the jurisprudence of this court, a review of the decisions on the subject would serve no useful purpose.

Our conclusion is that the district judge was in error in excluding the evidence of previous threats on the part of the deceased, under the circumstances of this case.

The verdict and sentence appealed from are annulled, and it is ordered that the case be remanded to the district court to be proceeded with according to law and to the views expressed in this opinion.

### On Rehearing.

PROVOSTY, J. The evidence in this case shows that the deceased came with a loaded shotgun to the yard fence of accused, within 30 feet of the latter's house, and was squatting there, facing the house, and holding the gun against his stomach, and across one arm, with one hand on the lock and stock, when the accused, who at the time was engaged in putting his household effects upon a wagon for moving away, came to the door of the house with a gun and told deceased to "throw down that gun," and at the same time fired on him.

This conduct of deceased, in thus coming to the house of accused, was or was not a hostile demonstration, accordingly as his purpose was or was not to kill accused. Ten or twelve 'people stood at the same place as deceased, watching the loading of the household effects. It was in a turpentine camp, and all parties were colored.

For showing that the presence of deceased where he was with this loaded gun was a hostile demonstration, accused offered to prove that deceased had threatened to kill him that day and that the reason of his moving away was in order to avoid deceased. Under these circumstances, we think the evidence should have been admitted.

The former judgment of this court is therefore reinstated, and made the final judgment of the court.

MONROE, C. J., dissents.