(90 South. 261)

No. 24545.

## STATE v. SANDIFORD.

(May 2, 1921. On Rehearing, Oct. 31, 1921. On Application for Second Rehearing, Nov. 28, 1921.)

*(Syllabus by Editorial Staff.)*

1. Homicide ⟨⟩151(3)—Burden is on state to prove killing was not done in self-defense.

Self-defense is not a special plea, and the burden of proof rests on the state to show beyond a reasonable doubt that the killing was done feloniously, and not in self-defense.

2. Criminal law ⟨⟩731—Jury alone answer fact questions as to guilt; judges answer law questions or fact questions upon which a ruling rests.

In criminal prosecutions the jurors alone answer questions of fact pertaining to accused's guilt or innocence, while judges answer only questions of law or questions of fact upon which a ruling rests and which do not pertain to guilt or innocence.

On Rehearing.

3. Criminal law ⟨⟩1144(5)—In absence of other showing, it is presumed court convened regularly at time of arraignment.

Where the minutes show that on the day of defendant's arraignment court opened according to adjournment, and there is nothing showing from what day it adjourned, the presumption is that it convened regularly.

4. Indictment and information ⟨⟩139—Motion to quash must be filed before plea of not guilty.

A motion to quash should have been filed before plea of not guilty was entered, and defendant did not have until the first day of the next session to file such motion.

5. Criminal law ⟨⟩301—Refusal to permit withdrawing of plea of not guilty so motion to quash could be filed held not abuse of discretion.

In a prosecution for murder, *held*, that the trial judge did not abuse his discretion in refusing to permit the withdrawal of a plea of not guilty in order that a motion might be filed to quash the indictment.

6. Criminal law ⟨⟩1166½(6)—Counsel's explanation of verdicts that could be rendered in murder case held not reversible error.

Permitting counsel for prosecution to explain to juror the various verdicts that might be rendered in a murder case during examination on voir dire, where such explaining was correctly done, and the state peremptorily challenged the juror, and the defendant finally secured a jury without exhausting all of his challenges, *held* not reversible error.

7. Criminal law ⟨⟩1111(5)—Judge's statement conflicting with defendant's will be accepted in the absence of proof.

Where there is a conflict between the statement of appellant and that of the trial judge, in the absence of proof that the latter was in error, his statements will be accepted.

8. Criminal law ⟨⟩655(1)—Judge's statement that ruling was final held not error, where done to prevent counsel's disregarding ruling.

In a prosecution for murder, a trial judge's remark to counsel that he had ruled on certain matters and that the ruling, so far as the court was concerned, was final, *held* not error, where intended to cause counsel to desist from ignoring the court's rulings.

9. Criminal law ⟨⟩643, 667(2)—The law names the clerk as the party to reduce objections to writing, so that defendant cannot complain of want of stenographer.

Act No. 113 of 1896 names the clerk of court as the one to reduce evidence to writing, so that defendant was beyond his right when he insisted upon a stenographer, where the judge refused no request to have the clerk reduce to writing the objections and the evidence objected to, and constantly offered the clerk for such purpose.

10. Jury ⚙═131(17)—District attorney's asking juror whether he was opposed to capital punishment in cases of cold-blooded murder held not error.

Where a juror stated on his voir dire that he was opposed to capital punishment in some cases, the district attorney's asking whether he was opposed to it in cases of cold-blooded murder *held* not error.

11. Criminal law ⚙═1166½(6)—Defendant held not injured by district attorney's explanation of possible legal verdicts.

The fact that the district attorney explained to jurors on their voir dire the various verdicts under the law they might render *held* not to call for reversal, where there was no suggestion that he erred in the explanation, and the verdict was a legal one and responsive to the indictment, so that the defendant was not injured.

12. Criminal law ⚙═667(2) — Defendant waives right of having objections recorded by clerk by failing to dictate them to clerk.

While Act No. 113 of 1896 requires the judge, when an exception is taken to a ruling, to order the clerk to reduce to writing the facts upon which the bill has been retained, and it becomes the duty of defendant to dictate them to the clerk, failing to so do, waives such provision.

13. Homicide ⚙═190(4)—Proofs of prior threats held properly rejected in view of evidence.

In a prosecution for murder, defendant *held* to have failed to show by a preponderance of the evidence that the deceased made a hostile demonstration against him justifying his belief that his life was in danger or that he was in danger of great bodily harm, so that proof of prior threats was properly rejected.

14. Homicide ⚙═190(4)—Whether evidence of prior threats is admissible is for the court to determine.

Mere evidence of threats as distinguished from proof thereof is insufficient, and when the question arises as to whether a sufficient foundation has been laid for the admission of such evidence, that question is for the court.

15. Homicide ⚙═190(4)—Only when evidence leaves it doubtful as to who attacked may prior threats be admitted.

It is only when evidence leaves it doubtful as to who made the attack resulting in a killing that evidence of prior threats is admissible for that purpose.

16. Homicide ⚙═339—Ruling out evidence to rebut presumption of malice is not harmful, if error; conviction being of manslaughter.

Where the jury found defendant guilty of manslaughter, it implies that defendant acted without malice, and, if there was error in ruling out evidence of prior threats by deceased tending to show why defendant was armed, the error was without injury.

17. Criminal law ⚙═1090(16)—Ruling on motion for new trial cannot be reviewed in absence of bill of exceptions.

Where there is no bill of exceptions showing the overruling of the motion for new trial and incorporated evidence offered under it, the ruling thereon cannot be reviewed.

O'Niell, J., dissenting on rehearing.

*On Application for Second Rehearing.*

18. Homicide ⚙═190(3)—Overt act raising question of self-defense is necessary for admission of deceased's threats.

In order to make evidence of deceased's threats against defendant admissible, there must be shown some overt act of deceased sufficient to raise the question of self-defense.

Appeal from Thirtieth Judicial District Court, Parish of La Salle; F. E. Jones, Judge.

Roy Sandiford was convicted of manslaughter, and he appeals. Affirmed on rehearing.

Perrin & Perrin and A. D. Flowers, all of Jena, for appellant.

A. V. Coco, Atty. Gen., J. B. Thornhill, Dist. Atty., of Columbia (T. S. Walmsley, of New Orleans, S. L. Richey, of Alexandria, and C. W. Flowers, of Jena, of counsel), for the State.

O'NIELL, J. Appellant was prosecuted for the murder of one F. L. Sheppard, was convicted of manslaughter, and sentenced to serve a term of imprisonment in the penitentiary.

The record contains a number of bills of exception, several of which were reserved

to rulings of the district judge refusing to allow defendant to introduce evidence of previous threats on the part of Sheppard to kill defendant. In offering the evidence, defendant's counsel announced that the main purpose was to corroborate the testimony given by defendant; that is, to prove that Sheppard had made a hostile demonstration as if to take the life of defendant, and that he (defendant) shot Sheppard in self-defense, believing that Sheppard was about to carry out his threats and that his (defendant's) life was therefore in imminent danger.

The reason assigned by the district judge for refusing to admit evidence of the previous threats on the part of the deceased was that, from the testimony already heard on the subject, "there was no doubt in the mind of the court as to who was the aggressor" in the fatal difficulty. The judge also expressed the opinion, in his statement per curiam, that proof of previous threats on the part of the deceased, in a prosecution involving a plea of self-defense, is not admissible or relevant to the question as to which one of the parties was the aggressor, unless the question as to who was the aggressor is a very close or doubtful question.

There is no dispute about the general outlines of the case. Defendant was about 17 years of age and resided with his mother, about 200 yards from the residence of Sheppard, on a country road. There was ill feeling between the two families, because Sheppard's dogs had been annoying defendant's mother's hogs. On the day of the homicide, defendant, who was working at a sawmill, had come home for dinner and was taking a nap. His mother awoke him, telling him that Mr. Sheppard's dogs were again after her hogs. Hearing the dogs barking, he loaded his shotgun with buckshot and went towards Sheppard's house. There he found that the dogs were helping Sheppard's daughter to drive Sheppard's hogs out of Sheppard's cornfield. The boy immediately returned towards his own home and had walked a distance of about 125 yards when he met Sheppard in an automobile. The latter was a rural mail carrier and was returning home from one of his regular trips. Sheppard's 13 year old boy was with him on the front seat, and his 10 year old boy occupied the rear seat of the automobile. The car passed very close by defendant, and, as he stepped aside, he told Sheppard, perhaps sarcastically, to look out or he would run over a good man. The children in the automobile testified that defendant cursed their father when the automobile passed, but defendant denied the statement. It is not disputed that Sheppard stopped his automobile immediately. The car stopped a distance estimated at from 20 to 50 feet beyond the point where it had passed defendant, and Sheppard immediately got out of the car. The boy on the front seat grabbed his father's arm and attempted to prevent his getting out, because, as the boy testified, he had heard defendant curse his father and feared there would be trouble. Defendant testified that, as soon as the car stopped, Sheppard turned towards him and said: "What did you say, you G—— d—— s—— of a b——?" He testified that Sheppard then immediately stepped out of the car, and, advancing toward him, said: "You've got your gun; I'll see if you will use it." That he (defendant) raised his gun and told Sheppard to stop; and that Sheppard then placed his hand on his hip pocket and said: "I'm going to kill you, you little whiteheaded s—— of a b——." Whereupon, he (defendant) shot Sheppard.

The two boys who had been riding in the car, and two daughters of Sheppard, who had witnessed the homicide from a considerable distance, testified that their father was in the act of getting out of the car, and in fact had one foot yet on the running board, when he was shot. The two daughters of

Sheppard also testified that defendant had stopped by the roadside and was sitting on a log when the automobile came in sight, and that he then arose and stood by a tree. But defendant denied that statement. It is not disputed that Sheppard was shot in the thigh and that he must have been facing defendant when the shot was fired. There was no weapon found on the deceased or in the automobile. He did not have on a coat at the time he was shot.

The only question of fact pertaining to the guilt or innocence of the accused, which the jury had to decide, was whether defendant's statement, that Sheppard advanced upon him in such a threatening way as to give him good reason to believe that his life was in imminent danger, was a true or a false statement. The question was simply one of veracity between the defendant and the state's witnesses. To the question thus presented to the jury, proof of previous threats on the part of Sheppard to take defendant's life was surely relevant. In fact, the proof would not have been relevant to any other question because previous threats on the part of the deceased would not, alone, have justified the killing.

The evidence offered by defendant, of the alleged previous threats, consisted of the testimony of defendant's mother, to the effect that Sheppard had, some days before the fatal difficulty, come to her house and abused and cursed her and told her that he intended to kill defendant; and it consisted also of the testimony of four other witnesses, to the effect that Sheppard had, during the week preceding the homicide, boasted to them of the threat which he had made to kill defendant. Two of the latter witnesses would have testified that Sheppard had told them, on separate occasions during the week preceding the homicide, that he was armed with a 38 special, with which to kill defendant. Several of the witnesses would have testi-fied that they had warned defendant of the threats.

[1] Proof of such threats was relevant to the question whether defendant's statement was true that the deceased made a hostile demonstration as if to take defendant's life, and that defendant had reason to believe that his life was in imminent danger, when he fired the fatal shot. On that question depended defendant's plea of self-defense, and it was therefore the only question of fact upon which depended his guilt or innocence. The burden of proof of the facts relating to a plea of self-defense rests, not upon the defendant, but upon the state. As self-defense is not a special plea, the burden of proof rests upon the state to show, beyond a reasonable doubt, that the killing was done feloniously, and not in self-defense, in order to convict the party accused of a felonious homicide.

In State v. Ardoin, 128 La. 14, 54 South. 407, Ann. Cas. 1912C, 45, it was held:

"The plea of self-defense does not place upon the accused the burden of proving it, nor does it change the duty of the state to prove the guilt of the accused beyond a reasonable doubt."

The doctrine was approved in State v. Varnado, 128 La. 883, 55 South. 562, viz.:

"Accused, relying on self-defense, does not have the burden of proving that the killing was justifiable; but the state has the burden of proving beyond a reasonable doubt that the killing was not justifiable."

The doctrine was again affirmed in State v. Herring, 131 La. 972, 60 South. 634, viz.:

"Notwithstanding that a plea of self-defense, in a prosecution for murder, admits the killing, the burden of proof rests upon the state throughout the trial, and all the evidence considered to establish the guilt of the accused beyond a reasonable doubt. This court has so held in cases heretofore decided, and adheres to that view."

It would be entirely inconsistent with the doctrine quoted, to hold that a defendant,

pleading self-defense in a prosecution for murder, must prove, even by a preponderance of evidence, before being allowed to introduce evidence of previous threats on the part of the deceased, that the latter made such a hostile demonstration as to justify defendant's belief that his life was in imminent danger when he fired the fatal shot. It would require the defendant to first eliminate the very issue, and the only issue, to which the evidence of previous threats would be relevant, before allowing him to introduce the evidence of previous threats. Such a doctrine would deny the defendant the right to introduce evidence of previous threats, except in a case in which he would not need the evidence. To use a trite illustration, it would leave the defendant, in such case, in the situation of the boy who was forbidden to go in swimming until he should learn how to swim.

[2] Of course, if it were the province of the district judge and of this court to decide the question of veracity of the defendant and that of the witnesses for the state, as to whether it was the deceased or the defendant who was the aggressor in the fatal difficulty, we might well find a preponderance of evidence in favor of the state, and might even be convinced beyond a reasonable doubt. But, in criminal prosecutions, the jurors alone answer questions of fact pertaining to the guilt or innocence of the party accused; judges answer only questions of law, or questions of fact upon which a ruling rests and which do not pertain to the guilt or innocence of the party accused. As was said in the case of State v. Pairs, 145 La. 443, 82 South. 407:

"For the district court to withhold from the jurors and decide for them a question of fact on which depends the guilt or innocence of defendant in a criminal case is a violation of Const. art. 179, providing that the jurors shall be the judges of the facts pertaining to guilt or innocence.

"For the Supreme Court to decide questions of fact on which depend the guilt or innocence of defendant in a criminal case is a violation of Const. art. 85, confining the jurisdiction of the court in criminal cases to questions of law."

In the case last cited, we quoted with approval Rice on Evidence (Criminal) vol. 3, p. 575, § 362, viz.:

"Threats of violence by the deceased against the accused, though not communicated to the latter, are admissible as evidence where there is any doubt as to who began the encounter. They tend to show that it was the intention of the deceased at the time of the meeting to attack the accused, and hence tend to prove that the former brought on the conflict, and are relevant evidence. If all the evidence is to the effect that the defendant was the aggressor, it is not admissible."

Our conclusion is that it was an error on the part of the district judge to refuse to admit proof of the alleged threats.

The verdict and sentence appealed from are annulled, and it is ordered that this case be remanded to the district court for a new trial.

MONROE, C. J., and PROVOSTY and SOMMERVILLE, JJ., concur in the decree.

DAWKINS, J., takes no part.

On Rehearing.

OVERTON, J. Defendant was tried on a charge of murder, and was convicted of manslaughter. He has appealed, and relies on a number of bills of exception for a reversal.

The first bill that presents itself for consideration is one excepting to the ruling of the court for refusing to permit defendant to withdraw his plea of not guilty and file a motion to quash, based on the ground that the grand jury that returned the indictment was illegally drawn. Defendant, as reason why this permission should have been given him, urges that he was not arraigned at a regular term of court, nor at any term at all; that his leading counsel was absent at the time; that he moved to withdraw the

plea and file the motion to quash as soon as knowledge of the illegal drawing of the jury reached him; that he had, under the law, until the first day of the next session of court to file the motion.

[3] Defendant is in error when he says that he was not arraigned in open court. The minutes of November 22, 1920, the day on which the arraignment took place, show that on that day court opened according to adjournment. There is nothing showing from what day it adjourned. The presumption is that it convened regularly.

There seems to have been nothing unusual about the session of the 22d. On November 13th, the day upon which the indictment was returned, the trial judge gave notice from the bench, to the sheriff, to have in court, on November the 22d for arraignment, all persons indicted at that session, and accordingly, when court opened on that day, the defendant was arraigned.

It is true that when the arraignment took place, the counsel, who now appear of record as defendant's leading counsel, were not present, but, it is also true, that at the time of the arraignment defendant was assisted by an attorney at law, who is at present of counsel for him, and who, the trial judge states, in his per curiam, informed the court at the time that he represented defendant as leading counsel. There was no effort made to postpone the arraignment.

Defendant had ample time to inquire into the legality of the grand jury. The motion to quash was based upon the ground that the general venire list from which the grand jurors were selected contained many fictitious names, and the names of persons not residing in the parish. It is not, however, suggested that nonresidents, or jurors incompetent otherwise, sat as members of that body.

[4, 5] The motion should have been filed before the plea of not guilty was entered.

It is within the discretion of the trial judge to refuse to permit the withdrawal of such a plea in order that a motion to quash may be filed. State v. Rester, 116 La. 985, 41 South. 231; State v. Boudreaux, 137 La. 227, 68 South. 422. From what we have said we are not of the opinion that the judge a quo abused that discretion. Defendant did not have, under the law, as he contends, till the first day of the next session to file the motion.

[6] The next bill presents an exception to the ruling of the court permitting Mr. R. L. Richey, who was of counsel for the prosecution, to explain to a juror the various verdicts that might be rendered in a murder case, while the juror was being examined on his voir dire. The objection to the explanation is based upon the ground that the judge was the proper person to state to the juror the law, and that counsel was without right to state his version of it, and to ask the juror what his verdict would be, based on that version. The bill does not state what the explanation was, beyond what has been said. The trial judge states that the prosecution was explaining to the juror the various verdicts that could be rendered in a murder case; that this was done correctly; that the state peremptorily challenged the juror; and that finally the defendant secured a jury without exhausting all of his challenges. We are of the opinion that there is no merit in the bill.

[7, 8] The third bill reserved is to the effect that, after defendant had made the objection just passed upon, the court made the statement that no more objections would be tolerated from defendant's counsel; that the court's decision was final; that the court made many other statements over defendant's objection; that the court had previously, and even then, refused defendant's request for a stenographer, and had permitted

the trial to proceed without noting many of his objections.

The trial judge says that the above statement is incorrect; that he did, however, remark to counsel that he had ruled on certain matters, and that the ruling, in so far as his court was concerned, was final; that he made this remark, because, after he had ruled, counsel would not heed his ruling; that he permitted counsel to make all the objections he saw fit to make; that he advised counsel that he had no court stenog-. rapher; that he would appoint one, if one could be found; that he finally induced a young lady, who was a beginner in stenography, to take some testimony in the case; but that whenever the attorney for the defendant made an objection, he informed him that the clerk of court would take down the objection and the evidence objected to, if such was desired, and that this was invariably done.

[9] There is a conflict between the statement of defendant and that of the trial judge. In so far as the conflict exists, in the absence of proof that the trial judge is in error, his statement will be accepted. State v. Hooper et al., 114 La. 557, 38 South. 452. So accepting the statement of the judge a quo, and taking up for consideration the remark made to counsel to the effect that his rulings were final, in so far as his court was ·concerned, it is evident, as indicated by the per curiam of the judge, that the remark ·was intended to cause counsel to desist from ignoring the rulings of the court which the Judge states counsel was doing. So viewed, it affords no ground for reversal. Nor can the defendant properly complain because the court failed to procure a stenographer, when one was desired by him. Unquestionably the defendant has a right, in a criminal case, to have the facts, upon which his exception is based, reduced to writing. The law, however, names the clerk of court as the one to reduce them to writing. Act No. 113 of 1896. Hence the defendant was beyond his right when he insisted upon a stenographer. The judge states that he refused no request to have the clerk reduce to writing the objections and the evidence objected to, but constantly offered this official for that purpose. The defendant should have acted upon the offer. We therefore conclude that this bill is not well founded.

[10] Bill No. 4 was taken, in part, to the ruling of the court in permitting the state, while examining a juror on his voir dire, to use the expression "cold-blooded murder"; and in permitting the state to explain to jurors, during such examinations, the various verdicts they might render, under the law.

[11] The court states, in the per curiam attached to the bill, that the juror had stated he was opposed to capital punishment, in some cases; whereupon the district attorney asked the juror whether he was opposed to it in cases of cold-blooded murder. We are of the opinion that the use of the expression, in that connection, was not objectionable. The state had the right to ascertain whether, under the circumstances, the prospective juror was opposed to capital punishment in that class of cases, and that is all that the question implied. The mere fact that the district attorney explained to jurors, while they were being examined on their voir dire, the various verdicts that, under the law, they might render, does not call for a reversal. There is no suggestion that the district attorney erred in making the explanation by stating them incorrectly. The verdict rendered by the jury was a legal one, responsive to the indictment. The defendant was not injured by the explanation.

[12] In the same bill of exception the defendant also states that—

"Having noted that his objections and exceptions were not being noted by the clerk· and were therefore being lost, the defendant's

counsel objected to proceeding further for the reason and on the ground that his bills of exception to the court's rulings were being lost, whereupon the court ruled that if defendant wanted his bills taken down he would have to get a stenographer, as the court would not provide one, and the parish would not pay for one, to which remark, made in the presence of the jury, and to which ruling, the defendant, through his counsel, objected and excepted."

And then follows the usual clause relative to the presentation of the bill to the judge for signature.

The judge, in his per curiam, denies that the remark, in respect to the stenographer, was made, and states that he said he was willing at all times to appoint one, if one could be found, and to see that the stenographer was paid for his services; and told the defendant:

"That the clerk would take down any statement or objection; that if the attorney didn't see that the clerk did it, that he had no knowledge of the same."

While Act No. 113 of 1896 requires the judge, when an exception is taken to his ruling, to order the clerk to reduce to writing the facts upon which the bill has been retained, yet this requirement may be waived; and it is frequently waived in practice, by the attorney for the defendant not dictating the objection to the clerk to be taken down, after the ruling is made. In this instance, the judge, as appears from the preceding bill, to which he makes reference in this bill, in effect, ordered the clerk to reduce to writing all objections that defendant wished to be thus reduced, when he stated that the clerk would take them down. It then became the duty of the defendant to dictate them to the clerk. This he failed to do. Moreover, when the judge's attention was called to the fact that the objections had not been reduced to writing, he again informed defendant that the clerk would take down any statement or objection desired. There-

fore, when defendant did not do his part, in having them reduced to writing, it was his fault, and he cannot complain of it, notwithstanding disagreements arose thereafter, between defendant and the court, as to what the facts were. There was no reason to stop the proceedings, except for the purpose of writing the statements and facts upon which the bills had been retained, and this, from the per curiam of the judge, we are satisfied he was willing to do.

[13, 14] Bills 5, 6, 7, and 8 may be considered together. They relate to threats made by the deceased against the defendant prior to the fatal difficulty. The evidence to show the threats was offered, first, upon the theory that the deceased had made a hostile demonstration against defendant at the time defendant killed him; and, then, to show who was the aggressor. This evidence was also offered to rebut any inference of malice that might arise from the fact that defendant, shortly before the difficulty, armed himself with a shotgun, loaded with buckshot, with which he afterwards killed the deceased. The lower court excluded this evidence.

The facts pertinent to the question under consideration are as follows:

The defendant and the deceased were neighbors, living only a short distance apart, in the country. The deceased was a mail carrier. On the day he was killed, he took with him, in carrying the mail, his two sons, one about 10 years of age, the other about 13. He was a little later than usual in returning home.

About 45 minutes before the homicide, defendant, with a gun loaded with buckshot, went, according to his statement, to kill a bulldog, which he then thought was attacking his hogs, near the home of deceased, but which he afterwards discovered was not. At that time, there was a puppy barking at a hog. Defendant went sufficiently far to see that it was not his hog. He then

started towards his home, near by. In returning he walked around the fence that inclosed the premises of the deceased. The wife of the deceased spoke to him, at that time, but he did not answer. He testified that he did not reply, because he did not understand her. The widow, who did not witness the killing, testified that when he was walking around the premises he looked into the garage, and then went in the direction of his home.

Two of the daughters of the deceased, who were in position to see what was done, both testified that he walked to the road and sat on a log, one saying for some time, the other for several minutes, till the automobile containing their father approached, when he arose and walked to a gum tree in the road. A third daughter did not notice defendant sitting on the log, but testified that as the automobile approached, she looked up, and saw her father returning home.

While the daughters of the deceased were in position to see what occurred, yet they were too far distant to hear what was said. The two boys, who were in the car, however, testified that as it passed the defendant, he cursed their father; that the automobile was then stopped and the deceased asked the defendant what it was that he said. The older boy testified that when the car was stopped, the engine ceased running also, and that his father started to get out of the car, and that he (the son) caught his father's arm; that he did so because he had heard what defendant had said, but that his father had not.

The three daughters and the older son of deceased testified that as their father was getting out of the automobile, on the driver's side, with his left foot on the running board and his right foot about to touch the ground, which position caused him to face the defendant, the car having passed him a few feet, the defendant fired the fatal shot.

These witnesses testified that their father was not armed. The younger son testified substantially, relative to the shooting, as did the above witnesses, except that he did not describe how his father got out of the automobile.

Beyond that which has been given of the evidence of the defendant, in the beginning of this statement, the rest is to the effect that, when he reached the road, on his return home, after having seen about his hogs, he did not sit on the log; that when he reached the gum tree and stepped into the road, the deceased came very near running over him; that he said to deceased: "You had better look out; you will run over a good man;" that the deceased cursed him in a very insulting manner; that the car went about six feet, when it stopped; that the deceased had on no coat; that he (the defendant) saw no pistol or gun about him; that the deceased made two steps toward him, and as the deceased started to him, he said, addressing defendant, "You have got your gun, and I will see if you will use it"; that he (the defendant) then cocked his gun, and raised it, but not to his shoulder, pointing it towards deceased, and telling him to stop; that the deceased stopped, but in doing so put his hand to his hip pocket, and cursing defendant, said, "I am going to kill you"; that he then shot deceased, because he believed his life was in danger, and was expecting trouble with him.

Upon a further consideration of the case, after the rehearing granted, we have concluded that under the evidence we would not be justified in disturbing the ruling of the trial judge holding that defendant was the aggressor, and that the deceased made no hostile demonstration.

Defendant has failed to lay the proper foundation for the admission of prior threats, by failing to show by a preponderance of evidence that the deceased made a hostile dem-

onstration against him of such a nature as to justify him in believing that his life was in danger or that he was in danger of great bodily harm, and therefore proof of prior threats, for all purposes for which they are admissible, was properly rejected. State v. Williams, 111 La. 212, 35 South. 521; State v. Thomas, 111 La. 806, 35 South. 914. Mere evidence of such threats as distinguished from proof thereof, is insufficient. When the question arises as to whether a sufficient foundation has been laid for the admission of such evidence, the question is one for the court to determine. State v. Boudreaux, 137 La. 227, 68 South. 422; State v. Golden, 113 La. 791, 37 South. 757; State v. Craft, 118 La. 113, 42 South. 718; State v. Benoit, 144 La. 276, 80 South. 329.

[15] The lower court also properly maintained the objection of the state to this evidence when the offering was made for the restricted purpose of proving who was the aggressor. It is only when the evidence leaves it doubtful as to who made the attack that evidence of prior threats is admissible for that purpose. State v. Miller, 125 La. 254, 51 South. 189.

[16] The defendant also offered to prove prior threats to show why he was armed, and to rebut the presumption of malice. The jury, however, found the defendant guilty of manslaughter. As this verdict implies that defendant acted without malice, it therefore follows that if there was error in the ruling, the error did not injure him.

[17] Defendant filed a motion for a new trial, in which he presented various grounds for the granting of one, and offered evidence in support of it. As there is no bill of exception showing its overruling and incorporating the evidence offered under it, there is nothing for us to review. State v. Washington, 104 La. 445, 29 South. 55, 81 Am. St. Rep. 141; State v. Napoleon, 104 La. 164, 28 South. 972.

For the reasons assigned, it is ordered, adjudged, and decreed that the decree heretofore rendered by us, in this case, be annulled and set aside; and that the verdict of the jury and the judgment of the lower court be affirmed. The defendant's right to apply for a rehearing, under section 4 of rule 14 of this court (136 La. xii, 67 South. xi), is reserved.

O'NIELL, J. (dissenting). The opinion and decree handed down on rehearing in this case overrules, not only the original decision rendered in this case, but also our latest previous decision on the subject, without even referring to it, and without assigning any reason, or suggesting any argument, that was not considered and rejected in the previous decision. I refer, of course, to State v. Pairs, 145 La. 443, 82 South. 407.

It will be deplored by the legal profession, I say with great respect, that the judgment of this court should begin again to oscillate upon the question, as it had been oscillating ever since the question was first presented, as to whether a defendant, pleading self-defense, in a prosecution for murder or manslaughter, should be required to establish his plea of self-defense by a preponderance of evidence and to the satisfaction of the presiding judge, before he can introduce evidence of previous threats on the part of the deceased.

In State v. Pairs, supra, decided only two years ago, it was said that there had been some confusion in our jurisprudence on this subject, and the court therefore undertook to put the matter at rest in this plain and simple language:

"When the defendant in a prosecution for murder or manslaughter pleads self-defense, and the evidence leaves a doubt as to whether he or the deceased was the aggressor in the fatal difficulty, evidence of previous threats on the part of the deceased is admissible to corroborate the evidence for defendant that

the deceased provoked the difficulty. In fact, proof of previous threats on the part of the deceased, in such case, is not pertinent to any other question than the question as to who was the aggressor in the fatal difficulty; because threats in themselves do not justify killing the threatener.

"The question whether the defendant or the deceased was the aggressor in the fatal difficulty is a question of fact; and, under the plea of self-defense, as in this case, it is the only question of fact upon which depends the guilt or innocence of the party accused. * * *

"For the district judge to withhold from the jurors, and decide for them, a question of fact on which depends the guilt or innocence of the defendant in a criminal case, is a violation of article 179 of the Constitution. And for the Supreme Court to decide such a question, is a violation of article 85 of the Constitution. Inasmuch as proof of previous threats on the part of the deceased is not admisible for any other purpose than to show who was the aggressor in the fatal difficulty, when that question is in doubt, it is a begging of the question to say that proof of such threats is not admissible until the defendant has proven affirmatively that the deceased was the aggressor, and that he (defendant) acted in self defense. The effect of such ruling would be to deprive the defendant of the benefit of proof of previous threats on the part of the deceased, in any and every case where self-defense is pleaded in justification of a homicide. The defendant in such case, after proving affirmatively that he was justified under the law of self-defense, would have no need of the proof of previous threats on the part of the deceased."

The foregoing opinion, in State v. Pairs, was unanimous. A rehearing was granted, and, after a more thorough consideration of the question, the original judgment of the court was reinstated and made final, the chief justice alone dissenting. The opinion was quoted liberally, and with approval, in the original opinion rendered in the present case. The deliberate conclusion of the court was that it would be a violation of article 179 of the Constitution then in force for the district judge, instead of the jury, to decide who was the aggressor in the fatal difficulty; and that it would be a violation of article 85

of the Constitution then in force for this court to decide who was the aggressor in the fatal difficulty. It is not possible that these rulings escaped the attention of the Constitutional Convention of 1921; for two members of this court were members of the convention and of the judiciary committee that drafted the articles to correspond with articles 85 and 179, respectively, of the Constitution of 1913. One of those two members of the court, who was chairman of the judiciary committee, was the presiding judge in the trial of the case of State v. Pairs. The original opinion in the present case, approving the doctrine of State v. Pairs, was rendered while the Constitutional Convention was in session and before the judiciary ordinances were adopted. There is therefore no reason to doubt that, if the members of the Constitutional Convention of 1921, or a majority of them, had not approved of our interpretation of articles 85 and 179 of the Constitution then in force, these provisions of the Constitution would have been changed so as to confer upon this court, and upon the judges of the district courts, jurisdiction to decide, in a homicide case in which the defendant pleads self-defense, the question as to who was the aggressor in the fatal difficulty.

We must not overlook the fact that this court, only a year and a half before the convention assembled, and again while the convention was in session, declared that article 85 of the Constitution then in force deprived this court of jurisdiction to decide the question as to who was the aggressor in the fatal difficulty, in a criminal prosecution for murder or manslaughter, where the defendant pleaded self-defense; and declared that article 179 of the Constitution then in force deprived the district judges of jurisdiction to decide who was the aggressor in such cases. In the light of these rulings, the convention of 1921 retained, in the seventh paragraph of

section 10 of article 7, the exact language of article 85 of the Constitution of 1913, viz.:

"The appellate jurisdiction of the Supreme Court shall also extend to criminal cases on questions of law alone," etc.

And the convention retained, in section 9 of article 19 of the Constitution of 1921, the exact language of article 179 of the Constitution of 1913, viz.:

"The jury in all criminal cases shall be the judges of the law and of the facts on the question of guilt or innocence, having been charged as to the law applicable to the case by the presiding judge."

In that respect, the provisions of the Constitution of this state, and of the United States, and of every one of the United States, for that matter, are mere embodiments of the common law, that, in criminal prosecutions, the jury has exclusive jurisdiction over questions of fact pertaining to the questions of guilt or innocence of the party accused.

All that is said in justification of the overruling of our original opinion in the present case is contained in the following paragraphs of the opinion rendered on rehearing, viz.:

"Upon a further consideration of the case, after the rehearing granted, we have concluded that, under the evidence, we would not be justified in disturbing the ruling of the trial judge, holding that the defendant was the aggressor, and that the deceased made no hostile demonstration.

"Defendant has failed to lay the proper foundation for the admission of prior threats, by failing to show, by a preponderance of evidence, that the deceased made a hostile demonstration against him of such a nature as to justify him in believing that his life was in danger, or that he was in danger of great bodily harm; and therefore proof of prior threats, for all purposes for which they are admissible, was properly rejected. State v. Williams, 111 La. 212, 35 South. 521; State v. Thomas, 111 La. 806, 35 South. 914. Mere evidence of such threats, as distinguished from 'proof thereof, is insufficient. When the question arises, as to whether a sufficient foundation has been laid for the admission of such evidence, the question is one for the court to determine. State v. Boudreaux, 137 La. 227, 68 South. 422;

State v. Golden, 113 La. 791, 37 South. 357; State v. Craft, 118 La. 118, 42 South. 718; State v. Benoit, 144 La. 276, 80 South. 329.

"The lower court, also, properly maintained the objection of the state to this evidence when the offering was made for the restricted purpose of proving who was the aggressor. It is only when the evidence leaves it doubtful as to who made the attack, that evidence of prior threats is admissible for that purpose. State v. Miller, 125 La. 254, 51 South. 189.

"The defendant also offered to prove prior threats to show why he was armed, and to rebut the presumption of malice. The jury, however, found the defendant guilty of manslaughter. As this verdict implies that defendant acted without malice, it therefore follows that, if there was error in the ruling, the error did not injure him."

The court does not even refer to the decision in State v. Pairs, which, in effect, overruled the decisions which are cited in the opinion handed down on rehearing in the present case. Nor does the court expressly overrule, or even refer to, any other of the decisions which stand in direct conflict with the opinion rendered on rehearing in the present case. The decisions which are cited in this opinion, from which I respectfully dissent, are, for the most part, not authority for the doctrine in support of which they are cited, as I shall now undertake to demonstrate.

In State v. Williams (the first case cited), the ruling was that evidence of the dangerous character of the prosecuting witness was not admissible, because, said the court, "there had been no testimony offered to prove any overt act." All that was said on that subject is:

"The next point urged by the defense arose out of the refusal of the trial judge to permit the defendant, on objection of the prosecuting attorney, to prove the character of the deceased.

"The court a qua reviewed the testimony offered, commented upon it, and annexed part of it to its statement.

"The question here is largely within the court's discretion. It states emphatically that there had been no testimony offered to prove

any overt act on the part of the prosecuting witness; that the accused was the aggressor."

The expression, in the first paragraph quoted, "to prove the character of the deceased," was, manifestly, an error, because the defendant was prosecuted for shooting with intent to murder, and was found guilty of shooting with intent to kill. The ruling, that evidence of the dangerous character of the person who was shot was not admissible until some other evidence was offered to show that he was the aggressor in the difficulty, was in line with the opinion of all of the text-writers on the subject, and in line with the jurisprudence of this court. State v. Demareste, 41 La. Ann. 618, 6 South. 136; State v. Mitchell & Dunn, 41 La. Ann. 1073, 6 South. 785; State v. Paterno, 43 La. Ann. 514, 9 South. 442; State v. Wilson, 43 La. Ann. 849, 9 South. 490; State v. Bryan, 138 La. 338, 70 South. 318. But these decisions are not authority for the proposition that evidence of previous threats on the part of the deceased is not admissible when there is some other evidence from which the jury might conclude that the deceased was the aggressor in the fatal difficulty.

In State v. Thomas, 111 La. 804, 35 South. 914 (the second case cited in the opinion from which I dissent), it was conceded by defendant's counsel that no foundation had been laid for the introduction of proof of prior threats on the part of the deceased. The evidence of the previous threats was offered only as a part of the res gestæ. The court said:

"Defendant also complains of the lower court's refusal to allow him to prove threats. The ground of the refusal was that proper foundation had not been laid by proof of an overt act. Defendant's insistence is, not that a proper foundation was laid, but that without the laying of a foundation the evidence was admissible as part of the res gestæ and in mitigation.

"The time when the alleged threats were made is not otherwise specified than that it was 'recently.' This may mean hours, days, or, for the matter of that, months, before the fatal occurrence. Evidently, under these circumstances, the alleged threats are not shown to have been part of the res gestæ."

In State v. Boudreaux (the third case cited in the opinion from which I dissent), the record did not disclose that all of the evidence heard on the question of the overt act was brought up on appeal; hence the court found that it was "therefore impossible for this court intelligently to review the ruling complained of." The court did, however, rule in accord with the ruling from which I now dissent. But the first decision cited in support of the ruling, State v. Kellogg, 104 La. 580, 29 South. 285, was not in accord with the decision in State v. Boudreaux. Moreover, only three members of the court concurred in the decision in State v. Boudreaux. The writer handed down a dissenting opinion, which was concurred in by the present senior associate justice. See, State v. Boudreaux, 137 La. 227, 86 South. 425.

In State v. Golden (the fourth case cited), it is true this court reviewed the testimony on the question as to who was the aggressor in the fatal difficulty, but the court came to the conclusion that a proper foundation had been laid for the introduction of evidence of a previous difficulty had between the parties, and of the dangerous character of the deceased; and the court therefore set aside the verdict. In that connection, the court said:

"If the matter at issue be one of fact bearing 'on the question of guilt or innocence' of the accused, its decision, by the terms of the Constitution (article 179), rests with the jury, and the trial judge has no authority to decide it, and, if it be anything less or more than that, and is properly ruled upon by the trial judge, then, assuredly, it * * * may be brought to this court by appeal."

Now, I respectfully submit, and it can be demonstrated, that the question as to who was the aggressor, where the defendant pleads self-defense, in a homicide case, is a

question of fact "bearing on the question of guilt or innocence." For, if the defendant in such case must prove, as held in the opinion from which I dissent, "that the deceased made a hostile demonstration against him of such a nature as to justify him in believing that his life was in danger, or that he was in danger of great bodily harm," before the defendant can introduce evidence of previous threats on the part of the deceased, it follows that the defendant must prove, to the satisfaction of the trial judge, that he is entitled to an acquittal, before he can introduce evidence of previous threats made by the deceased. If the trial judge should be satisfied that there was a preponderence of evidence—in fact, if the judge should have a reasonable doubt—"that the deceased made a hostile demonstration against him (the party accused) of such a nature as to justify him in believing that his life was in danger, or that he was in danger of great bodily harm," the judge would be bound to set aside the verdict if the jury should convict. For the defendant would then be entitled to an acquittal, under the law of self-defense, without any evidence of previous threats made by the deceased. The judge's ruling, in such case, admitting the evidence of previous threats made by the deceased, would be tantamount to his saying that the defendant had made out a case of self-defense, without any evidence of previous threats made by the deceased; and it would then be altogether unnecessary for the defendant to introduce evidence of the previous threats, after the judge had ruled that the evidence was admissible. And yet we know that the defendant does not bear the burden of proof of self-defense. The burden is upon the state to prove, beyond a reasonable doubt, that the homicide was committed feloniously and not in self-defense. See State v. Andy Johnson (No. 24758) 90 South. 257[1] (handed down on the same day on

which the decision from which I now dissent was handed down), citing State v. Ardoin, 128 La. 14, 54 South. 407, Ann. Cas. 1912C, 45; State v. Varnado, 128 La. 883, 55 South. 562; and State v. Herring, 131 La. 972, 60 South. 634.

Act 113 of 1896, which requires that, when an objection is made to the judge's ruling in a criminal trial, the clerk of court shall take down the facts, to be embodied in the transcript in case of an appeal, does not mean that this court shall decide the question of fact if it bears upon the question of guilt or innocence of the party accused. If the statute were susceptible of that meaning, it would be, to that extent, unconstitutional. This statute has been discussed and interpreted more than 30 times, during the last 25 years, and has never yet been regarded as purporting to confer upon this court jurisdiction to decide questions of fact bearing upon the question of guilt or innocence, in violation of the Constitution. The statute, in such case, enables this court merely to examine the facts and determine whether the question, as to who was the aggressor in the fatal difficulty, was an issue in the case. If it was an issue, the issue was one for the jury to decide, and the evidence of previous threats made by the deceased was admissible for determining, as far as it might aid in determining, that issue.

In State v. Craft (the fifth case cited), the defendant and another witness testified that the deceased had made a hostile demonstration, attempting to kill the accused; and two other witnesses testified that the deceased had not made any such demonstration. The district judge, saying that he gave more credence to the testimony of the two witnesses for the state than to the testimony of the defendant and the witness in his behalf, said that he "reached the conclusion that the overt act had not been established with sufficient certainty to warrant the admission of

---

[1] Ante, p. 922.

the evidence ruled out," i. e., evidence of a previous difficulty between the accused and the deceased. In other words, the judge himself passed judgment upon the credibility of the testimony on this important question of fact, bearing upon the question of guilt or innocence. The decision, sustaining the ruling, is therefore in direct conflict with the Constitution, and it ought to be considered as having been overruled by the decision to the contrary in State v. Pairs.

In State v. Benoit (the sixth case cited in the opinion from which I dissent), the reference to our "uniform jurisprudence" on this subject sounds like irony, viz.:

"The uniform jurisprudence in this state is to the effect that evidence of previous threats or of the dangerous character of the deceased, on the trial of a prosecution for murder, is not admissible until an overt act or a hostile demonstration has been proven to the satisfaction of the trial judge. See State v. Boudreaux, 137 La. 227, 68 South. 422."

The very first decision cited in support of that proposition, in State v. Boudreaux, is State v. Kellogg, 104 La. 580, 29 South. 285, in which the court referrred to and virtually overruled the decision in State v. Ford, 37 La. Ann. 443, in this vigorous language (104 La. 599 and 600, 29 South. 285, 294), viz.:

"It is true that in the case of State v. Ford, 37 La. Ann. 443, the jurisdiction, which, as we have seen, is vested in the trial judge, with respect to collateral facts, was held to extend to facts bearing upon the question of guilt or innocence, and that precedent has been followed in later cases. A careful reconsideration of the subject has, however, led to the conclusion that our fundamental law requires that, where it becomes necessary to determine the question of the existence vel non of any fact bearing upon the guilt or innocence of the accused in a criminal case, such question should be submitted to the jury, provided there is any evidence tending to establish such fact."

The evidence of previous threats on the part of the deceased, in Kellogg's Case, was excluded, because there was no evidence what-

149 LA.—31

ever of a hostile demonstration on the part of the deceased, and because, in fact, the defendant, in his testimony, admitted that there was no hostile demonstration on the part of the deceased. But this court took occasion to say (104 La. 600, 29 South. 285) that the ruling should have been different if the defendant had testified that there was a hostile demonstration on the part of the deceased at the time of the killing.

Speaking of "the uniform jurisprudence" on this subject, the case of State v. Kellogg is not the only one in which this court has dealt with this question logically and decided in accord with the requirements of the Constitution.

The decision in State v. Cancienne, 50 La. Ann. 847, 24 South. 134, is very much in point. The defendant found a man in a room with his (defendant's) wife, and immediately shot the man; whereupon defendant's wife rushed upon him and tried to disarm him, at the same time calling to the man who was shot. During the struggle for the pistol, defendant drew a razor and cut his wife's throat, killing her. He was indicted and tried for murder and was convicted of manslaughter. The trial judge ruled that evidence of the superior strength of the woman was not admissible, because, in his view of the testimony, the defendant was the aggressor in the fatal difficulty. Reversing the ruling, this court said:

"It is possible that appellant had no good substantial ground for believing his life to have been in danger at that time and through his wife's conduct, but that was a matter for the jury to determine."

In State v. Stockett, 115 La. 743, 39 South. 1000, the rule was stated in a somewhat modified form, viz.:

"And perhaps in all cases where several witnesses testify to an overt act, the safer course would be to leave the question of their credibility to the jury."

In State v. Rideau, 116 La. 245, 40 South. 691, the defendant shot and killed his uncle, without a word having passed between them, while the latter, unarmed, was entering defendant's bedroom. On trial for murder, defendant pleaded self-defense and offered evidence of threats made by the deceased on the day before the homicide and evidence of the dangerous character of the deceased. The evidence was excluded, and, on appeal, the ruling was reversed, on the ground that the evidence of previous threats and of the dangerous character of the deceased was admissible to show whether his conduct, at the time of the killing, might reasonably have been regarded by the accused as being hostile and menacing to him.

Adverting again to the case of State v. Boudreaux, supra, let me call attention to the fact that the Columbia Law Review, vol. 16, No. 1, January, 1916, commented twice (pages 57 and 72) upon the decision, and, in each instance, regarded it as authority for the proposition merely that the appellate court could not intelligently review the ruling of the trial judge because only a portion of the evidence appeared in the transcript; and, commenting upon our want of a "uniform jurisprudence" on this subject, the editor said:

"For a critical comparison of the holdings of the Louisiana courts, see 1 Wigmore, Evidence, § 246, n. 13, p. 312."

Turning to the page of the book referred to, we find that Prof. John Henry Wigmore gathered up more than two columns of conflicting decisions by this court, and showed how the judgment of the court had staggered from one side to the other, on this question of proof of an overt act; and, at the end of the list, we read this criticism of our so-called "uniform jurisprudence," viz.:

"From this maze of twisting precedents, which none but a Louisiana practitioner should be condemned to unravel, four conclusions may be ventured: * * * (4) The court of Louisiana had still, in the above

period, to learn two truths essential to the successful administration of justice: First, that the fundamental duty of a Supreme Court is to be familiar with its own decisions, and either to repeat them or to overrule them, but not to ignore them."

Turning to page 184 of the same volume, we find this expression by Prof. Wigmore, regarding the rule of admissibility of evidence of previous threats on the part of the deceased, viz.: "In some jurisdictions, it is impossible to ascertain the exact rule." The only footnote to that expression is: "As in Louisiana."

I submit, therefore, with great respect, that, in so far as the opinion rendered on rehearing in this case is founded upon a supposed "uniform jurisprudence," it will not bear the test.

In this opinion, on rehearing, from which I dissent, the court cites the case of State v. Miller, 125 La. 254, 51 South. 189, in support of the proposition:

"It is only when the evidence leaves it doubtful as to who made the attack that evidence of prior threats is admissible for that purpose," meaning, "for the restricted purpose of proving who was the aggressor."

The rule, that evidence of previous threats on the part of the deceased is admissible for the restricted purpose of showing who was the aggressor in the fatal difficulty, when the evidence otherwise leaves a doubt on the question, applies only to *uncommunicated threats;* which, as a general rule, are not admissible at all. But the decision cited, State v. Miller, is not authority even for that doctrine, because, as the court found, the evidence offered was not of a threat, but was merely an irrelevant statement made by the witness herself, a sister of the deceased, soon after the homicide. For that reason, the court said that the case was not within the rule announced in State v. Barksdale, 122 La. 788, 48 South. 264.

In the case last mentioned, the rule *re-*

*garding uncommunicated threats* was stated thus:

"In a prosecution for manslaughter, uncommunicated threats, made by the deceased against the accused shortly before the homicide, are admissible in evidence as tending to show who was the aggressor in the fatal encounter and as supporting the plea of self-defense."

There were two previous decisions of this court, sustaining the proposition that *uncommunicated threats* are admissible for the restricted purpose of showing who was the aggressor in a homicide case, when that question is an issue before the jury. State v. Williams, 40 La. Ann. 168, 3 South. 629; and State v. Lindsay, 122 La. 375, 47 South. 687. The restricted purpose for which evidence of such threats is admissible applies only to *uncommunicated* threats, because proof of uncommunicated threats could not possibly serve any other purpose than to indicate that the deceased was the aggressor in the fatal difficulty. But evidence of *communicated* threats also serves that purpose, as well as the purpose of showing why the defendant was armed or otherwise prepared for trouble, and why he was better justified in believing that his life was in danger, than if he had not heard of the threats. When it is said that evidence of uncommunicated threats is admissible for the restricted purpose of showing who was the aggressor, when that question is in doubt, the meaning is, of course, when that question is at issue before the jury; because the jury alone must determine whether there is a reasonable doubt as to who was the aggressor; and it is upon that question alone that the evidence of *uncommunicated* threats is admissible. For the same reason, communicated threats are admissible in evidence for the purpose of showing who was the aggressor in the fatal difficulty, when that question is presented, by the introduction of other evidence, as an issue for the jury to decide.

It is said in the opinion rendered on rehearing in this case that the excluding of the evidence of previous threats when offered for the purpose of showing why the accused was armed, and to show that there was no malice on his part, did no harm, because the jury found the accused not guilty of murder but guilty of manslaughter. "Voluntary manslaughter", is universally defined, substantially, as the felonious killing of a person, not with malice aforethought, but in the heat of passion and on immediate provocation. In this case, therefore, the jury, without any evidence of the previous hostile threats made by the deceased, found that there was immediate provocation for the killing. The provocation, of course, was the conduct of the deceased at the time of the killing; for the jury had not the benefit of any evidence of any previous provocation, as of the previous threats made by the deceased. I submit, therefore, that the jurors found that there was some hostile conduct on the part of the deceased at the time of the killing. If they had heard the evidence of the previous threats on the part of the deceased, they might have concluded that the defendant was justified in his fear and belief that the deceased was about to carry out his threats. It is not for us to say what effect the evidence on that question of fact, on which depended the guilt or innocence of the defendant, might have had on the mind of any juror. It was a question for the jury alone to decide, right or wrong.

It has been said, in several of the opinions that accord with the one from which I now dissent, that the Legislature has not seen fit to say that the trial judge or this court has not the authority to decide the question of fact as to who was the aggressor in a homicide case. My answer is that the Legislature could not grant that authority or jurisdiction without violating the mandate of the Constitution. And there is no tribunal that

could point the way any plainer than the Constitution itself has made it.

## On Application for Second Rehearing.

PER CURIAM. [18] The judgment of the court on the original hearing in the case of State v. Pairs, 145 La. 443, 82 South. 407, was not intended to be a departure from the established jurisprudence on the point of a foundation having to be laid, by proof of an overt act, for opening the door to the admission of evidence of previous threats. It appearing to be so, however, to the Attorney General, a rehearing was granted on his application; and on the rehearing the court sought to make plain that what was decided in the case was, not that an overt act did not have to be shown, but that, under all the circumstances of that case, the conduct of the deceased constituted an overt act.

Speaking of the evidence of previous threats, Mr. Wigmore, in his monumental work on Evidence, says, at page 313:

"Considerations of public policy call for some restrictions calculated to secure the bona fide use of such evidence. These may be, and frequently are, the same as those applied to the use of the deceased's character."

And with regard to evidence of the character of the deceased, he says, at page 308:

"These considerations * * * have induced a few courts to decline to recognize this evidence at all. The others have usually laid down certain conditions intended to prevent its abuse. A common limitation is the broad one that other evidence shall be offered which serves to bring self-defense fairly in issue— some appreciable evidence of the deceased's prior aggression, or of ground to believe in impending aggression—for it is not always clear which is judicially meant. By some courts it is said (more strictly) that the issue of self-defense (i. e., presumably, the impending of an attack), must be in doubt. Another and more specific form of limitation is the doctrine of 'overt act,' peculiarly developed in Louisiana and Florida. * * * This is a wise and fair limitation. * * *"

The learned author recognizes here the development of the doctrine of "overt act" in this state.

O'NIELL, J., adheres to his dissenting opinion.