LAND, J.
 

 Defendant is charged with the murder of Mathilda Jones, also known as Mary Mathilda Gustaver, on October 7, 1931.
 

 He was found guilty as charged without capital punishment, and was sentenced to the state penitentiary for the remainder of his natural life.
 

 On appeal, defendant relies upon five bills of exceptions.
 

 Bills Nos. 1,. 2, and 3.
 

 These bills were reserved to questions propounded by defendant to James Peyton, a state witness; to Charlotte Hornsby, a defense witness, with whom defendant was living at the time of the homicide; and to the defendant himself by his counsel, for the purpose of showing prior threats by deceased against. defendant and previous difficulties between the parties.
 

 For some time before the homicide, defendant had lived with deceased at S25 South Dupre street in the city of New Orleans, but, on the night of the killing, and for three weeks before that time, defendant had stayed at the apartment of Charlotte Hornsby on the second floor of a dwelling at 3820 Third street
 

 . The deceased was killed by defendant in front of this house and near a parked automobile owned by defendant.
 

 The state witness, James Peyton, was asked on cross-examination by defendant’s counsel: “Did you know what took place previous to that night that you saw him at 825 South Dupre Street?”
 

 The defense witness, Charlotte Hornsby, was asked on direct examination:
 

 “Q. You said ‘Buster’ (meaning Matthew Jones, defendant) lived at your house three weeks previous?
 

 “A. Yes, sir.
 

 “Q. You know why ‘Buster’ came to your house?”
 

 Defendant was asked by his counsel on direct examination: “Have you had previous trouble with this woman?”
 

 The purpose of these questions was to show that, while defendant resided with deceased at 825 South Dupre street, she had shot at him twice and had severely cut and wounded him with a knife.
 

 All of these questions were objected to by the state, and the objections were sustained by the court, on the ground that no overt act or hostile demonstration on the part of the deceased, at the time of the killing, had been proved to the satisfaction of the trial judge, as a proper foundation for the introduction of evidence of prior threats by deceased against defendant, or of a previous difficulty between the parties, or of the display attempted by defendant before the jury of cuts and wounds, claimed to have been inflicted by the deceased in a previous difficulty.
 

 It is expressly provided in article 482 of the Code of Criminal Procedure of this state that:
 
 “In the absence of proof
 
 of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible.”
 

 
 *1069
 
 From the Ford Case, 37 La. Ann. 460. down to the present time, it has been uniformly held by this court that, in passing upon the question of prior threats of the deceased, the trial judge must of necessity be clothed with the authority to decide whether a proper foundation has been laid for the proffered evidence; that such authority necessarily includes the discretion to ignore and not consider testimony which his reason refuses to believe; and that
 
 mere evidence
 
 of such hostile demonstration, as distinguished
 
 from proof
 
 thereof, is insufficient. State v. Sandiford, 149 La. 933, 90 So. 261, and authorities there cited.
 

 It is also well settled that: “The term 'overt act,’ as used in connection with prosecutions for murder where the plea of self-defense is involved, means any act of the deceased which manifests to the mind of a reasonable person
 
 a present intention
 
 on his part to kill defendant or do him great bodily harm.” State v. Brown, 172 La. 129 (7), 133 So. 383, 386; State v. Williams, 46 La. Ann. 709, 15 So. 82; State v. Stewart, 47 La. Ann. 410, 16 S. W. 945; State v. Fontenot, 50 La. Ann. 537, 23 So. 634, 69 Am. St. Rep. 455.
 

 From the testimony of defendant in the record, it is clear that he relies upon a plea of self-defense in justification of the homicide.
 

 A short time before the killing, deceased went upstairs at 3820 Third street, where defendant was staying with Charlotte Horns-by, and called for him several times. He did not answer. She then walked downstairs and said: “You won’t answer. • I know you are in there; you won’t answer, but I am going to fix that car so you can’t move it.”
 

 When she got downstairs, deceased commenced “tampering with the froint part of the ear,” to use the words of the state witness.
 

 At this juncture defendant, armed with a pistol, came from Charlotte Hornsby’s apartment upstairs, and stopped on the fifth step from the ground. As testified by him, deceased was then in the act of striking with a wrench the radiator of his car, which was parked in front of the building. Deceased then went behind the car, and came back towards defendant, with the wrench in her right hand, then changed it to her left hand, and
 
 with her right hand
 
 made “a break' into her bosom like she had a gun.” Then defendant fired the first shot, and immer diately deceased went behind the car and said: “You ain’t done nothing yet, you shoot again.”
 

 As testified by defendant, deceased was still advancing on him
 
 with her right hand in her bosom,
 
 when the second shot was fired, as was the first, from the fifth step from the ground.
 

 After the shooting, which occurred about 8:30 or 9 p. m., defendant went upstairs, dressed, and drove away in his car.
 

 Defendant testified repeatedly and most positively that, when the first and second shots were fired by him, the deceased was advancing towards him, coming straight at him,
 
 and facing him, with her right hand in her bosom.
 

 The only eyewitnesses to the homicide were the defendant and a state witness by the
 
 *1071
 
 name of Ohris Weaver, who was a stranger to all of the parties concerned, and therefore a disinterested witness.
 

 In his testimony as to self-defense, defendant is contradicted not only by this witness, but also by the gunshot wounds themselves found upon the body of the deceased, and received by her at the hands of defendant. These wounds constitute plain and indisputable physical facts in the case, and, though mute witnesses, testify most strongly against the defendant, and clearly impeach his testimony as to an overt act on the part of the deceased at the time of the killing.
 

 The state witness Ohris Weaver, a longshoreman, testified that deceased had been hammering on the ear when defendant came down the steps and said to her: “ ‘Get away from this car.’ Well, at that time, she was in the front end of the car. So, she walked ten the side of the car
 
 and lie fired a shot.
 

 “Q. What did she do then?
 

 “A. She walked just about middleways of the car on the flat (house) side, and she looked at him a little while, and she walked on to the back of the car. She stood there awhile.
 
 She held her right hand up,
 
 and said to the man: ‘You hadn’t done anything yet,’
 
 and he fired the second shot.
 
 She walked on the uptown side of the car. She looked towards him about three or four seconds, as near as I can guess. She walked on the other side of the banquette in an alley, * * * ” and shortly afterward was found dead in the alley by a young man who chanced to walk that way, and later on the police came. Tr. 52.
 

 This witness testified that
 
 deceased had nothing in her hand
 
 at the time she raised it up, and said to defendant “shoot again, you hadn’t done nothing yet.” Tr. 54, 55.
 

 No pistol on the deceased was seen by this witness at the time of the shooting. None was found on or near her body, after she was killed, although diligent search was made by the police.
 

 The coroner testified that there were two gunshot wounds on the body of the deceased, that one bullet evidently passed
 
 on the outer side of the right hand,
 
 causing a laceration on the middle finger,
 
 malcing an exit on the inner side, fracturing the middle finger, and causing an abrasion of the groin
 
 about three inches in length.
 

 If deceased had had her right hand in her bosom at the time these wounds were inflicted, as defendant testified, the bullet, after fracturing the middle finger, would have lodged in the chest, and could not have possibly inflicted a slight abrasion m
 
 the groin on the right side,
 
 as was done in this case.'
 

 These wounds, manifestly, were made by the first shot fired, as the deceased immediately held up her right hand and said to defendant, “You hadn’t done anything yet, shoot again.”
 

 The bullet from the second shot entered the right forearm about six inches below the right shoulder, fractured the humerus, passed through the chest wall to the fourth rib, and through the lower lobe -of the right lung, and tore a large hole in the right ventricle. This bullet was extracted from the heart itself, and clearly inflicted the fatal wound which resulted in the death of the deceased,
 

 
 *1073
 
 But this mortal wound was not inflicted upon deceased
 
 while she toas facing 'and advancing upon defendant, with her right hand in her bosom,
 
 as defendant testified, and could not have possibly been inflicted in that way, as the wound resulted, unquestionably, from a side shot, since the point of entrance was the right forearm below the right shoulder, and the range of the bullet was through the chest to the heart.
 

 We therefore affirm the ruling of the trial judge, holding that defendant failed to prove satisfactorily that there was an overt act or hostile demonstration on the part of the deceased, at the time of the killing, and consequently that the evidence of prior threats and previous difficulties, tendered by defendant, was not admissible before the jury, as the proper foundation had not been laid by him.
 

 Bill No. 4.
 

 In this bill defendant states that, for the purpose of ovei’coming any presumption from the testimony of other witnesses that he had fled from justice after the killing, he sought to show that, when he left the scene of the shooting, he did not know that deceased was wounded; that without delay he sought the advice of counsel; that he got in touch with Mr. O. W. Puneky and Mr. John Brown; that he learned that the woman he had shot died; that thereupon he surrendered to the police accompanied by his counsel Mr. Brown; that he never had any idea of flight; but that this testimony was excluded by the trial judge on the objection of the state.
 

 In the per curiam to this bill, the judge a quo states that the state at no time adduced evidence tending to show flight, and that he ruled against defendant, since evidence by defendant tending to explain flight could only be introduced in rebuttal of evidence by state showing flight.
 

 Besides, the testimony of the witness James Peyton, which went to the jury, as well as the testimony of the defendant, which also went to the jury, completely satisfies defendant’s requirements.
 

 In addition to this, at the request of counsel for defendant, the trial judge charged the jury as follows: “That flight does not of necessity indicate a consciousness of guilt. Plight may mean this or it may be consistent with innocence; in other words, flight may be explained one way or the other. The jury must satisfy itself on that score from all the evidence in the case. It may be explained by guilt; it may be explained by fear or timidity, or it may be explained by anything at all appearing in the evidence which satisfies the jury.”
 

 The. ruling of the court below is correct, and is approved.
 

 Bill No. 5.
 

 This bill was reserved to the overruling by the trial judge of a motion for a new trial on the grounds that the verdict was contrary to the law and the evidence, and that the trial judge erred as set forth in bills of exceptions Nos. 1, 2, 3, and 4.
 

 The judge a quo states in the per curiam to this bill that all of the evidence taken in the case established the guilt of the defendant to his satisfaction and beyond a reasonable doubt.
 

 
 *1075
 
 The errors assigned in bills Nos. 1, 2, 3, and 4 have already been reviewed and disposed of adversely to the contentions of defendant, and we do not find it necessary to further review them.
 

 In our opinion, the motion for new trial was properly overruled.
 

 The conviction and sentence of defendant are affirmed.
 

 O’NIELL, C. J., dissents from the ruling on bills Nos. 1, 2, and 3.