FOURNET, Justice.
 

 The defendant, Pete Boudreaux, was indicted and tried for the murder of Absey Cormier, and convicted of manslaughter. Eleven bills of exception were reserved to the rulings of the lower court. A motion for a new trial, incorporating the bills of exception as a basis therefor, was filed and denied by the court, to which ruling the defendant reserved a bill of exception; whereupon the defendant was sentenced to serve a term of not less than three nor more than nine years at hard labor in the state penitentiary. The defendant has appealed.
 

 Counsel for defendant contends that the bills of exception numbered S, 7, and 9 are serious, meritorious, and constitute a basis for reversible error; and according to his argument in his brief, he does not abandon the other bills, but claims that, though they do not constitute reversible error, nevertheless they show the bias and the prejudice of the trial judge throughout the trial against the defendant and his counsel, which necessarily had the effect of prejudicing the jury to the injury of the defendant.
 

 In order to properly discuss the merits of the bills of exception, it is necessary to make a statement of the case. The defendant is a resident of Orange, Tex., and was a special officer of that community, but on December 15,1935, and prior thereto, he was employed as assistant manager of the “Four Rose Bar and Dance Hall,” situated in the parish of Calcasieu, about six miles from Orange. It is the contention of defendant
 
 *437
 
 that while pursuing his line of employment, he was called upon by the constable of the ward in western Calcasieu parish, about 11 o’clock on the night of December 15, 1935, to assist him to quell a disturbance across the highway, and, after procuring his revolver, he proceeded with the constable to the place of the disturbance. However, prior to their reaching the place where the disturbance took place, the participants had ceased all hostilities. While defendant was standing near-an automobile, without notice or provocation, he was suddenly and violently struck with brass knucks from behind by the deceased, Absey Cormier. The impact of the blow knocked the defendant against an automobile and as a result he suffered a severe cut back of the ear. The defendant immediately drew his revolver, stepping a few paces forward in the direction of his assailant, who at that time was running away from accused, ordered him to halt and stop twice, and upon his failing to- do so, shot and killed the deceased.
 

 During the trial of the case, the defendant sought to offer evidence to prove an overt act on the part of the deceased in order to lay the foundation to prove previous communicated threats and the dangerous character of the deceased, which evidence was rejected by the trial judge, and bill of exception No. 5 was reserved to the ruling.
 

 The trial judge, in his per curiam, after stating his appreciation of the facts in the case and refusing to allow the introduction of evidence of previous threats and the dangerous character of the deceased, said: “It is quite true that Cormier committed an overt act when he struck Boudreaux immediately before the shooting, and if at that time and in that fight, and before Cormier ran away, Boudreaux had shot him, unquestionably an overt act,' which would have been established, would have permitted the introduction of prior threats, etc. However, * * * Cormier retreated and ran away from the difficulty, and while he was running away, Boudreaux shot him in the back and killed him. * * *”
 

 The jurisprudence of this state is very rigid and less liberal than the common law states on the admissibility of evidence relative to the bad character of the deceased and previous communicated threats, and “the statutory law and fixed jurisprudence of this state are that, ‘in the absence of proof of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible.’ * * * And the proof of such overt act or hostile demonstration must be to the satisfaction of the trial judge.” State v. Scarbrock et al., 176 La. 48, 145 So. 264, 265, citing Code Cr.Proc. (Act No. 2 of 1928), art. 482; State v. Brown, 172 La. 121, 133 So. 383, and authorities. But in this case the trial judge found as a fact, and the record conclusively supports his finding, that “Cormier committed an overt act when he struck Boudreaux
 
 immediately
 
 before shooting. *
 
 *
 
 *”
 

 It is our opinion that once the overt act had been established, especially when it was shown to be a sudden and violent attack upon the accused, as in this case, it was not for the trial judge to determine whether Cormier’s retreating from the ac
 
 *439
 
 cused was in good faith and for the purpose of leaving the scene and of placing the defendant out of danger, or whether his purpose in retreating was to gain a better position to strike again. The statement of the trial judge in his per curiam that “Cormier retreated and ran away from the defendant, and while he was running away Boudreaux shot him in the back and killed him,” is the judge’s own conclusion from the evidence, but the decision of that issue was the exclusive province of the jury. State v. Thompson, 45 La.Ann. 969, 13 So. 392. See, also, State v. Robertson, 50 La.Ann. 92, 23 So. 9, 69 Am.St.Rep. 393.
 

 In connection with this phase of the case, it is well to note that counsel for defendant sought to have six special charges made, which were tendered to the trial judge and district attorney prior to the judge giving his charge to the jury. The trial judge refused to make these charges and from his ruling bill of exceptions No. 7 was reserved.
 

 One of the special charges (No. 2), in substance, was that a citizen has a right to make an arrest without a warrant when a felony had been committed in his presence, and if the jury found from the evidence that the accused shot the deceased in order to effect an arrest of a felon, that it was not murder, and moreover, where one is violently and unexpectedly assailed, he may pursue his adversary until he has secured himself from danger of bodily harm or injury, which charge was refused by the trial judge who assigned as his reasons therefor that the requested charge was not a correct statement of the law. But the record shows that he failed in his general charge to give any instruction on the subject of an accused’s right to pursue his adversary.
 

 We are of the opinion that the district judge erred as appears from the following language used in the case of State v. Robertson, supra: “While the charge requested might be deemed deficient in some respecfs, we think the accused was substantially entitled to the instruction asked. * * * In the leading Case of Selfridge, Harr. & T. Cas. Self-Def. 3, followed by our courts, and recognized as correct in the text-books,
 
 the law is stated
 
 in substance thus:
 
 ‘When, from the nature of the attack, there is reasonable ground to believe there is a design to destroy the life of the accused, or commit any known felony on his person, the killing of the assailant will be justifiable homicide.’
 
 And again:
 
 ‘A
 
 man may repel force by force, in defense of his person, habitation, or property, against one who manifestly, by violence or surprise, attempts to commit a felony, such as murder, robbery, etc.
 
 In these cases he
 
 is not obliged to retreat, but
 
 may pursue his adversary until he has secured himself from all danger; and, if he kill him in so doing, it is justifiable homicide.’
 
 1 Archb.Cr.Law, p. 791 et seq., notes at foot. State v. Chandler, 5 La.Ann. [489] 490 [52 Am.Dec. 599]; [State v. Spears, 46 La.Ann. 1524, 16 So. 467].” (Italics ours.)
 

 The next serious point raised by counsel is to be found in bill of exceptions No. 9. After the jurors had deliberated for some time, they requested additional instructions, and through their foreman, stated to the court that “the members of the
 
 *441
 
 jury are rather confused as to the last part of your charge, relating to a felony and manslaughter. They have got that confused with the feíony charged.” And, after making a statement of the law relating to manslaughter, the court charged the jury as follows:
 

 “Now, to give you a definition, or to show you what passion will reduce a homicide from murder to manslaughter, I will say that where a man is suddenly and violently attacked, for example where he is struck a severe blow, which arouses in him sudden indignation and anger, and where under those circumstances the indignation and anger and humiliation and feelings of wrong would be aroused in an ordinarily reasonable and prudent man, and he kills while his reason is temporarily dethroned because of this great and sudden violent anger and passion, the killing then is not excusable or justifiable, but the homicide is reduced from murder to manslaughter, if the killing is not otherwise justifiable, that is to say, if the killing is the result of passion.
 

 “In other words, if, in this case, the defendant Boudreaux shot Cormier because Cormier hit him in the side of the head, either with his fist or with a pair of knucks and then ran away from Boudreaux, and Boudreaux followed him and shot him, the killing would not be justifiable or excusable, and would either be murder or manslaughter, depending upon whether or not you found that Boudreaux shot him while under the influence of sudden and violent passion which did not have time to cool, after the blow was struck, if he received one.
 

 “Now, the law is, gentlemen, that although a man may have aroused in him, because of an assault or fighting or striking, a very violent passion, if in an ordinarily reasonable and prudent man, time has elapsed from the time of the blows until the time of the shooting for his passion to cool, and for his reason to regain its normal condition, and nevertheless he goes ahead and shoots the man because of the blow, and because of anger and not because of dethronement of reason, the shooting would be murder and not manslaughter.
 

 “Now whether or not the shooting in this case was the result of malice, which you will remember, I am sure,-in the definition I gave you earlier in the evening, or the result of sudden and violent passion, or whether it is justifiable under the rules I gave you, are matters • for you to decide, and upon which the court can not express any opinion, of course.
 

 “Does that clear it up, Mr. Fanguy?”
 

 But apparently the jury was still confused; the instructions desired were relative to the right of a private citizen to make an arrest, and the trial judge charged on that subj ect-matter as follows:
 

 “I told you in my charge this afternoon that if the Constable Chargois had asked Boudreaux to come over and help him quell a disturbance, and after that, after the disturbance had ceased to exist, for whatever reason it ceased to exist, Cormier came up and hit Boudreaux, and for that offense Boudreaux tried to arrest Cormier, then I told you that he would be making the arrest or attempting
 
 to make the
 
 arrest as a pri
 
 *443
 
 vate citizen, and not as an officer, because he was asked by the constable to help him in a particular case, and there was no authority to make any other arrest as an officer.
 

 “Now, it is important to know the difference between a felony and a misdemean- or in this connection, as you will see in a minute, because nobody, and especially a private citizen, has any right to use a pistol in making an arrest for a misdemeanor. You can’t shoot a man to arrest him where a misdemeanor has been committed.
 

 “Now in this case, if you should find that Cormier hit Boudreaux with his fist on the side of the head, and not with brass knucks, that offense would be what we term a misdemeanor, and in that event, that is to say, if you found that Cormier was guilty of a misdemeanor with respect to Boudreaux, Boudreaux would not have any right to use a pistol on him or shoot at him or shoot him to make an arrest if he was trying to get away.
 

 “If Cormier hit Boudreaux with the brass knucks, it would then be for you to say whether that offense was a misdemeanor or a felony. It might have been either, and I can not tell you which it was. I can only tell you this, that if Cormier struck Boudreaux with a brass knuck a hard blow, and with the intention of killing him or with the intention of seriously hurting him, or without regard to his intention, if he actually severely hurt him, that is to say, if he inflicted a grave wound on him, Cormier in that case would be guilty of striking with the intent to kill or murder, depending on certain other facts it would not be necessary for you to consider, for striking with the intent (to) murder and striking with the intent to kill are both felonies.
 

 “If you should find that Boudreaux was struck with a brass knuck, you should then determine whether or not Cormier was guilty of striking with the intent to kill or murder, or simply striking with a dangerous weapon, assault with a dangerous weapon. If he did not hurt Boudreaux very much, if he did not inflict any grave wound on him, then you might find that he was guilty of assault with a dangerous weapon.
 

 “Now if you find in this case that the defendant had a misdemeanor committed on him by Cormier, he has the right to arrest Cormier for the misdemeanor, but he did not have any right to shoot him to keep him from escaping or running away from the arrest. He didn’t have any right to hurt him.
 

 “If you find that Cormier was guilty of striking with the intent to murder, or striking with the intent to kill, within the definition I gave you, Boudreaux had the right 'to arrest him as a private citizen, but before he had the right to shoot or to hurt him, he was obligated to chase him to try to catch him, to try to effect a capture without doing him any grave bodily harm, and if you should find in this case that Boudreaux did not make any serious effort to catch him, didn’t do what an ordinarily reasonable and prudent man would have done under the circumstances to catch him, but never the less shot him, he would be guilty, because nobody has the right to shoot a felon, that is to say a man who has
 
 *445
 
 committed a felony, and who is tiding to escape, unless there is no other way to effect a capture, no other reasonable way to effect a capture, and I charge you as a matter of law that the mere halting of a man running away does not fulfill the requirements of the law that the man trying to make a capture shall use every reasonable means at hand to effect the capture without shooting.
 

 “Now, I told you that there are two defenses in this case. One was or is that the defendant shot in self-defense. The other defense is that he shot to make an arrest. Now, you should decide which, if either of these defenses actuated the defendant in shooting, if either. If the defendant shot Cormier while Cormier was running away from him, and the defendant was pursuing Cormier, he was the aggressor in that part of the difficulty, and I charge you as a matter of law that an aggressor can not plead self-defense because the law of self-defense is based upon the law of necessity, and whenever there exists no necessity to shoot or kill in- order to preserve the life of the man doing the shooting or the killing, he can not plead self-defense when he kills.
 

 “Now if you should find that the killing in this case, or the shooting in this case was because Cormier had struck Boudreaux on the side of the head, and that was the only reason he shot him, then Boudreaux is guilty of either murder or manslaughter within the rules I have just given you.
 

 “Of course, if you decide that he did not shoot him in self-defense, you should find out whether or not there was some other reason why he shot him, that is to say, whether he shot him with malice. If you decide he did shoot him with malice, under the rules I gave you this afternoon, that would end the case as far as you are concerned, because he would be guilty of either murder or manslaughter.
 

 “If you decide he did not shoot him with malice, you should decide he was justified in shooting him to make an arrest, within the rules I have just given you.
 

 “Now, gentlemen, does that make it clear ?
 

 “By Mr. Fanguy:
 

 “Yes sir. * * *”
 

 Whereupon counsel for the accused objected on the ground that the charge was argumentative and the trial judge was commenting upon the facts.
 

 A mere reading of the trial judge’s charge shows that he began by practically telling the jury that the defendant was making an arrest as a private citizen and that under the law nobody, “especially a private citizen,” has any right to use a pistol in making an arrest for a misdemeanor. He followed this by charging the jury on the rights of a citizen to make an arrest if a felony had been committed in the citizen’s presence, and here again he interposed the possibility of a misdemeanor only having been committed in the instant case, that is, an assault with a dangerous weapon, and concluded his remarks on that point with the statement that “while he had the right to arrest the deceased, he did not have any right to hurt him.”
 

 
 *447
 
 The next part of the trial judge’s charge is a strong and persuasive statement from which the jury could draw no conclusion other than that the accused had no right to shoot the deceased under the circumstances; and in closing his charge, the judge left with the jury the inescapable inference of the guilt of the accused of either murder or manslaughter.
 

 We think that the effect of the two charges given by the trial judge at the request of the jury for further instructions was tantamount to a direction by him to the jury to return a verdict of either guilty of murder or manslaughter. This was grievous error which we cannot sanction, for it is not only unauthorized by law, but it would be permitting the trial judge to inject his own personal views and feelings and prejudices into every case and ultimately make the trial by jury a mere gesture.
 

 While the other eight bills of exception present some rulings by the trial judge that were not correct, nevertheless, they do not constitute reversible error and in view of the fact that they will probably not recur in a new trial, it is unnecessary to discuss them here.
 

 It is therefore ordered, adjudg.ed, and decreed that the verdict of the jury and the sentence of the district judge are hereby set aside and annulled, and the case remanded for a new trial according to law and consistent with the views herein expressed.
 

 O’NIELL, C. J., concurs in the result.
 

 ODOM, J., concurs in the decree.