O’NIELL, Chief Justice
 

 (dissenting).
 

 My opinion is that a person on trial for murder or manslaughter, who pleads that he did the killing in self-defense, should be allowed to introduce evidence of previous threats on the part of the deceased, or of the dangerous character of the deceased, whenever there has been introduced any evidence at all from which the jury might decide that the deceased made a hostile demonstration against the defendant at the moment of the killing. In other words,
 
 *795
 
 when the issue presented is whether the deceased or the defendant provoked the fatal difficulty, the issue is one for the jury to decide, from all of the evidence, including the evidence of previous threats on the part of the deceased, or of his dangerous character, if there be any such evidence. The reason for that it that the question to be decided, as to who provoked the difficulty, is a question of fact, on which depends the guilt or innocence of the defendant. In truth, that is the only question on which depends the question of guilt or innocence of the defendant, and is therefore the only question that the jury ultimately has to decide, in a prosecution in which the defendant pleads self-defense. We must bear in mind that, according to the Constitution of Louisiana, and according to the Constitution of each and every state in the Union, and according to the Constitution of the United States itself, the jury alone has authority to decide questions of fact on which depends the question of guilt or innocence of the defendant in a criminal prosecution before a jury. The jurisdiction or authority of the judge in such a case is confined to the deciding of questions of law, and collateral questions of fact — such as a question on which depends the 'competency of a juror or the admissibility of certain evidence — and only such questions, therefore, as have no direct relation to the question of guilt or innocence of the party accused. Section 9 of article 19 of the Constitution of 1921 (which was article 179 of the Constitution of 1898 and of the Constitution of 1913) declares that the juries in criminal cases are the judges of the law and the facts, after receiving their instruction on the law from the presiding judge. And section 10 of article 7 of the-Constitution of 1921 (which was article 85-of the Constitution of 1898 and of the Constitution of 1913) limits the jurisdiction of the Supreme Court, in criminal cases, to. “questions of law alone.”
 

 In the case of State v. Pairs, 145 La. 443, 82 So. 407, 409, which was decided in 1919,, and has never been overruled, it was said that, in a prosecution for murder or manslaughter, where the defendant pleads self-defense, it would be a violation of article 179 of the Constitution of 1913 (which is. retained as section 9 of article 19 in the Constitution of 1921), for the presiding judge, instead of the jury, to decide who-was the aggressor in the fatal difficulty;, and that, in such a case, it would be a violation of article 85 of the Constitution of 1913--(which is retained in section 10 of article-7 of the Constitution of 1921) for the Supreme Court to decide who was the aggressor in the fatal difficulty. In the Pairs Case, the question of admissibility of the-.evidence of the threats which were said to-have been made by the deceased on occasions previous to the fatal difficulty was. the only question presented. A- rehearing was granted in the case, and, after it was-reargued and was reconsidered with the. utmost deliberation, the judgment originally rendered, setting aside the verdict and granting a new trial, was reinstated “and made the final judgment of'the court.” In the course of the opinion the law was. stated thus:
 

 “For the district judge to withhold from-the jurors, and decide for them, a question.
 
 *797
 
 of fact on which depends the guilt or innocence of the defendant in a criminal case, is a violation of article 179 [now sec. 9 of art. 19] of the Constitution. And for the Supreme Court to decide such a question is a violation of article 85 [now sec. 10 of art. 7] of the Constitution. Inasmuch as proof of previous threats on the part of the deceased is not admissible for any other purpose than to show who was the aggressor in the fatal difficulty, when that question is in doubt, it is a begging of the question to say that proof of such threats is not admissible until the defendant has proven affirmatively that the deceased was the aggressor, and that he (defendant) acted in self-defense. The effect of such a ruling would be to deprive the defendant of the benefit of proof of previous threats on the part of the deceased, in any and every case where self-defense is pleaded in justification of a homicide. The defendant in such case, after proving affirmatively that he was justified under the law of self-defense, would have no need of the proof of previous threats on the part of the deceased.”
 

 In support of the court’s ruling in the Pairs Case, the court quoted from Rice on Evidence, Criminal, vol. 3, p. 575, § 362, in the chapter entitled “Evidence of Self-defense,” and cited, to the same effect, Wharton’s Criminal Evidence, 10th Ed., vol. 2, § 912.
 

 In the eleventh edition of Wharton’s Criminal Evidence, vol. 1, p. 371, § 286, the doctrine is stated thus:
 

 “Uncommunicated threats are relevant to show the feeling and disposition of the deceased toward the accused; to show whether the killing was malicious or in self-defense; to show who was the aggressor, or as tending to show who was the aggressor.”
 

 The first case cited by Wharton, in the footnote (8) to the expression, “to show who was the aggressor,” and also in the footnote (9) to the expression “or as tending to show who was the aggressor,” is the case of Wiggins v. Utah, 93 U.S. 465, 23 L.Ed. 941.
 

 In Underhill’s Criminal Evidence, 4th Ed., p. 1121, § 564, Wiggins v. Utah is the first case cited in the footnote (46) to support the declaration: “Uncommunicat-ed threats are then relevant to show he [the deceased] provoked the affray, or to explain the intention with which he participated in it, or to illustrate the character of the attack.”
 

 In Wigmore on Evidence, 2d Ed., vol. 1, pp. 345, 346, § 110, the rule with regard to uncommunicated threats, and the general principle concerning their admissibility, is stated thus:
 

 “Where on a charge of homicide the excuse is self-defense, and the controversy is whether the deceased was the aggressor, the deceased’s threats against the accused are relevant. The deceased’s design to do violence upon the defendant is of some value to show that on the occasion in question he did carry out, or attempt to carry out, his design. Moreover, it is the fact of his design, irrespective of its communication to the defendant, that is evidential.”
 

 In the next section, section 111, it is said: “This evidence is now conceded to
 
 *799
 
 be admissible, by virtually all courts.” And the first case cited in the footnote (1) is Wiggins v. Utah, 93 U.S. 465, 23 L.Ed. 941.
 

 In Wiggins v. Utah, the defendant was convicted of murder in the territory of Utah, and the conviction and the death sentence were affirmed by the Supreme Court of the territory. The case was brought to the Supreme Court of the United States on a writ of error, under an act of Congress (18 Stat. 254, § 3) allowing a writ of error in capital cases. The only error complained of, as stated in the opinion rendered in the case, was the ruling, sustaining the objection to the introduction of evidence of threats said to have been made by the deceased, a short time before the killing, which were not communicated to the defendant. There was only one witness to the fatal difficulty, and his testimony was unfavorable to the defendant, although the witness could not say who fired the first shot. In reversing the judgment of the Supreme Court of Utah and setting aside the verdict, and granting a new trial, the Supreme. Court of the United States said:
 

 “In a trial for homicide, where the question, whether the prisoner or the deceased commenced the encounter which resulted in death,
 
 is in any manner of doubt,
 
 it is competent
 
 to prove
 
 threats of violence against the prisoner made by the deceased, though not brought to the knowledge of the prisoner.” (The italics are by me.)
 

 One member of the court, Mr. Justice Clifford, dissented from the ruling in Wiggins v. Utah, on the ground that there was absolutely “no' evidence in the case tending to show that the deceased was the aggressor, or that the act of homicide was perpetrated in self-defence.” But the decision was cited with approval in Allison v. United States, 160 U.S. 203, 215, 16 S.Ct. 252, 257, 40 L.Ed. 395, 400, thus:
 

 “In Wiggins v. Utah, 93 U.S. 465 [23 L.Ed. 941], it was held that, on a trial for a homicide committed in an encounter, where the question as to which of the parties commenced the attack is in doubt, it is competent to prove threats of violence against defendant made by deceased, though not brought to defendant’s knowledge, for the evidence, though not relevant to show the quo animo of the defendant, would be relevant, under such circumstances, to show that at the time of the meeting deceased was seeking defendant’s life. Whart.Cr.Ev. § 757; Stokes v. People, 53 N.Y. [164] 174, [13 Am.Rep. 492]; Campbell v. People, 16 Ill. 17, [61 Am.Dec. 49]; People v. Scoggins, 37 Cal. 676; Roberts v. State, 68 Ala. 156. It is from the dissenting opinion in Wiggins’ Case that the trial judge indulged in quotation in connection with the undisputed proposition that a person’s life is not to be taken simply because he has made threats.”
 

 In Stevenson v. United States, 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980, the principle is stated thus:
 

 “An issue as to manslaughter raised by evidence cannot be taken from the jüry because of other evidence of a different kind.”
 

 Allison v. United States and Stevenson v. United States are both cited with ap
 
 *801
 
 proval in Wallace v. United States, 162 U.S.
 
 466, 16
 
 S.Ct. 859, 40 L.Ed. 1039, where the rule is stated thus:
 

 “Prior threats by a person killed, against his slayer, are relevant evidence in a homicide case, where from any view the jury can properly take of the circumstances the belief of the accused that he was in imminent danger of death or great bodily harm might excuse his act or reduce the crime from murder to manslaughter.”
 

 To the same effect was the decision in Thompson v. United States, 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146. It appears, therefore, that the prevailing opinion in the present case is not only contrary to the opinions of all of the text-writers on the law of evidence, and contrary to all of the decisions cited by them in the footnotes to their opinions, but is contrary also to the rule established by the decisions of the Supreme Court of the United States.
 

 The case of State v. Pairs, 145 La. 443, 82 So. 407, was quoted with approval in State v. Sandiford, 149 La. 933, 90 So. 261, 263, where the defendant alone testified that the deceased made a hostile demonstration at the moment of the killing, and where four children of the’ deceased contradicted the defendant’s testimony, and the defendant offered evidence of previous threats on the part of the deceased,' the purpose of the offering being to corroborate the defendant’s statement that the deceased committed the overt act; and this court held that the evidence of the alleged previous* threats was admissible,' and said:
 

 “The only question of fact pertaining to the guilt or innocence of the accused, which the jury had to decide, was whether defendant’s statement, that Sheppard [the deceased] advanced upon him in such a threatening way as to give him good reason to believe that his life was in imminent danger, was a true or a false statement. The question was simply one of veracity between the defendant and the state’s witnesses. To the question thus presented to the jury, proof of previous threats on the part of Sheppard [the deceased] to take defendant’s life was surely relevant. In fact, the proof would not have been relevant to any other question because previous threats on the part of the deceased would not, alone, have justified the killing. * * *
 

 “The burden of proof of the facts relating to a plea of self-defense rests, not upon the defendant, but upon the staté. As self-defense is not a special plea, the burden of proof rests upon the state to show, beyond a reasonable doubt, that the killing was done feloniously, and not in self-defense, in order to convict the party accused of a felonious homicide. [Here the court quoted from several decisions], * * *
 

 “It would be entirely inconsistent with the doctrine quoted, to hold that a defendant, pleading self-defense in a prosecution for murder, must prove, even by a preponderance of evidence, before being, allowed to introduce evidence of previous threats on the part of the deceased, that the- latter made such a hostile demonstration as to justify defendant’s belief that
 
 *803
 
 his life was in imminent danger when he fired .the fatal shot. It would require the defendant to first eliminate the very issue, and the only issue, to which the evidence of previous threats would be relevant, before allowing him to introduce the evidence of previous threats. Such a doctrine would deny the defendant the right to introduce evidence of previous threats, except in a case in which he would not need the evidence.”
 

 There was no dissent from the decision in the Sandiford Case. Qne member of the court did not take part in the decision, and three members said that they concurred in the decree. A rehearing was granted and the original opinion and decree were reversed. The right was reserved to the defendant to apply for a rehearing. I adhered to my original opinion. The court, in refusing a second rehearing, handed down a per curiam, saying:
 

 “The judgment of the court on the original hearing in the case of State v. Pairs, 145 La. 443, 82 So. 407, was not intended to be a departure from the established jurisprudence on the point of a foundation having to be laid, by proof of an overt act, for opening the door to the admission of evidence of previous threats. It appearing to be so, however, to the Attorney General, a rehearing was granted on his application; and on the rehearing' the court sought to make plain that what was decided in the case was, not that an overt act did not have to be shown, but that, under all the circumstances of that case, the conduct of the deceased constituted an overt act.”
 

 The court, in its per curiam, then cited “Mr. Wigmore, in his monumental work on Evidence,” and quoted his approval of putting some limitation upon the admissibility of evidence of previous threats on the part of the deceased, or of the dangerous char.acter of the deceased, in a prosecution in which the defendant invokes the law of self-defense. The pertinent part of the quotation, taken from the second edition, vol. 1, of Wigmore on Evidence, is this:
 

 “A common limitation is the broad one that
 
 other evidence shall be offered
 
 which serves to bring
 
 self-defense
 
 fairly into issue, — some appreciable evidence of the deceased’s prior aggression, or ground to believe in impending aggression, — for it is not always clear which is judicially meant. By some courts it is said (more strictly) that the issue of
 
 self-defense
 
 (i. e., presumably, the impending of an attack)
 
 must be in doubt.
 
 Another and more specific form of limitation is the doctrine of
 
 ’overt act’,
 
 peculiarly developed in Louisiana and Florida. * * * This is a wise and fair limitation.
 
 *
 
 * *»
 

 This last sentence, between the asterisks, is, as completed by Mr. Wigmore: “This is a wise and fair limitation, provided it be not further refined by details which degenerate into quibbles, — a proviso not always observed.”
 

 The per curiam handed down in the refusal of a second rehearing in the Sandiford Case ends thus:
 

 "The learned author [meaning Mr. Wig-more in his monumental work on Evidence]
 
 *805
 
 recognizes here the development of the doctrine of ‘overt act’ in this state.”
 

 Mr. Wigmore does recognize the development of the doctrine of the “overt act,” in Louisiana and in Florida; but he does not sanction the doctrine as developed in Louisiana. In the footnotes under sections 246 and 247, on this subject, it appears from all of the Florida cases that are cited that it is not necessary for the defendant to first prove that the deceased committed an “overt act,” but it is necessary only -for him to first introduce
 
 some evidence
 
 of the overt act, so as to put the question at issue, — before he is allowed to introduce evidence of previous threats on the part of the deceased, or of the dangerous character of the deceased. Mr. Wigmore, I regret to say, criticizes severely the jurisprudence in Louisiana,— on the subject of the “overt act.” For example, under section 246, (a)
 
 Overt act,
 
 p. 508, in his analysis of a long list of decisions by this court, Mr. Wigmore says: “From this maze of twisting precedents, which none but a Louisiana practitioner should be condemned to unravel, these conclusions could be ventured,” etc. And, under section 247, p. 515, in his analysis of the list of Louisiana cases there cited, Mr. Wigmore says: “Thus the see-saw of rulings continued to inject an interesting element of chance into criminal practice in this State.” Immediately following that comment, Mr. Wigmore cites State v. Sandiford, 149 La. 933, 90 So. 261, 273. It was in that case that the court, in refusing a second rehearing, referred to “Mr. Wig-more, in his monumental work on Evidence,” as recognizing “the development of the doctrine of ‘overt act’ in this state.”
 

 The fundamental error, in the development of this doctrine in Louisiana, is in giving to the word “proof” a very technical meaning, instead of the meaning in which the word is generally used and understood. The error had its origin in State v. Ford, 37 La.Ann. 443, 461, when the court, overlooking the fact that it was an invasion of the province of the jury, and a violation of the Constitution, for the court to decide the question of fact on which depended the guilt or innocence of the defendants, said:
 

 “The question for solution is therefore simple. It is this: Does the rule governing the admission of such testimony [to prove the dangerous character of the accused or previous threats of violence against the defendants] content itself with
 
 testimony
 
 of an overt act by the deceased, or does it require
 
 proof
 
 of such an act? There is a wide difference between
 
 evidence
 
 of an act and
 
 proof
 
 of the same.”
 

 The word
 
 proof,
 
 in its common acceptation, is a synonym for the word
 
 evidence.
 
 It is so said in Webster’s New International Dictionary — where, among the definitions of the word
 
 proof,
 
 is this definition, and synonym, viz.: “also that which proves or tends to prove; that which induces or tends to induce certainty of judgment; evidence.”
 

 Hence, to say that there is no
 
 proof
 
 of a given fact is the same as to say that there is no
 
 evidence
 
 of the fact. The context in which the word
 
 proof
 
 is used in article 482 of the Code of Criminal Procedure gives an illustration of an instance where the
 
 *807
 
 word
 
 proof
 
 is synonymous with the word
 
 evidence,
 
 viz.:
 

 “In the absence of proof of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible.”
 

 If the word
 
 proof,
 
 as employed in this article of the Code of Criminal Procedure, had to be construed so as to compel a defendant in a criminal prosecution, invoking the law of self-defense, to prove his innocence, under the law of self-defense, before he is allowed to introduce evidence of previous threats on the part of the person slain or injured, the article of the Code of Criminal Procedure would be violative of the provisions in the Constitution, reserving to the jury the exclusive right to decide questions of fact relating to the question of guilt or innocence of the defendant in a criminal prosecution; and such an interpretation of the law would produce an anomalous consequence. A cardinal rule of statutory construction is that, if a law is susceptible of either of two constructions, one of which will render the law unconstitutional, or produce an anomalous result, and the other of which constructions will leave the law constitutional and produce a reasonable result, the latter construction must prevail.
 

 The construction which is given to article 482 of the Code of Criminal Procedure in the prevailing opinion in this case produces an anomalous result, because it is bound to do injustice, either to the defendant or to the State, in every case, according to which way the judge rules, after hearing evidence on the question of the overt act., If the judge rules in favor of the State, without having heard the evidence of the previous threats, he deprives the defendant of the benefit of the evidence which is important in the solution of the question — and which is relevant only to the question — which the judge has already decided. If he rules in favor of the defendant, that puts an end to the case, and the jury ought to be discharged, because the judge then has decided, virtually, that the defendant is entitled to be acquitted, under the law of self-defense;- and the State has no right of appeal.
 

 Adverting now to the decision in State v. Ford, which is the source and origin of all of the confusion in the jurisprudence on this subject, we must not overlook the fact that that decision was virtually overruled in State v. Kellogg, 104 La. 580, at page 599, 29 So. 285, 294, in these vigorous terms:
 

 “It is true that in the case of State v. Ford, 37 La.Ann. 443, the jurisdiction, which, as we have seen, is vested in the trial judge with respect to collateral facts, was held to extend to facts bearing upon thé question of guilt or innocence, and that precedent has been followedrin later cases.' A careful reconsideration of the subject has, however, led to the conclusion that our fundamental' law requires 'that, where it becomes necessary to determine the question of the existence vel non of any fact bearing upon the guilt or innocence of the accused in a criminal case, such question should be submitted to the jury, provided there is any evidence tending to establish such fact.”
 

 
 *809
 
 The decision in State v. Kellogg was in line with State v. Cancienne, 50 La.Ann. 847, 24 So. 134, and was followed by a ruling to the same effect in State v. Stockett, 115 La. 743, 39 So. 1000, and by another ruling to the same effect in State v. Rideau, 116 La. 245, 40 So. 691.
 

 It is true that State v. Ford, decided in 1885, was cited with approval in State v. Boudreaux, 137 La. 227, 68 So. 422, in 1915; but the latter decision, in reality, is authority only for the proposition that this court cannot intelligently review the finding of the trial judge, on the question of the- overt act, when only a part of the testimony is in the record. The decision in the Boudreaux Case was so construed in two comments that appeared in the Columbia Law Review, vol. 16, No. 1, pp. 57 and 72, in January, 1916. In one of these comments, on the subject of the want of a “uniform jurisprudence” on the subject, the editor said: “For a critical comparison of the holdings of the Louisiana courts, see 1 Wigmore, Evidence, § 246, note 13, p. 312.”
 

 The only question that the presiding judge has to decide when the question of admissibility of evidence of previous threats on the part of the person slain or injured arises is whether any evidence has been introduced from which the jury might determine that the person slain or injured was the . aggressor at the time when he was killed or injured. The same rule applies to the admissibility of evidence of the dangerous character of the person slain or injured, when the defendant on trial invokes the law of self-defense. And, on appeal, this court has authority only to decide the same question — whether there was any evidence of the so-called overt.act, or hostile demonstration. For that purpose, and on that subject, a record of the testimony should be brought to this court, under the provisions of Act No. 113 of 1896, p. 162.
 

 I concede that, in the recent decisions quoted in the prevailing opinion in this case, the court has held, virtually if not in exact terms, that a defendant who, in a prosecution for murder or manslaughter, invokes the law of self-defense, must prove that he was justified under the law of self-defense, before he is allowed to introduce evidence of previous threats on the part of the deceased, or evidence of the dangerous character of the deceased. I refer to the quotations from State v. Sandiford, on rehearing 149 La. 933, 90 So. 261, State v. Brown, 172 La. 121, 133 So. 383, and State v. Jones, 175 La. 1066, 145 So. 9. The other decisions cited, requiring the defendant to
 
 prove
 
 the overt act, to the satisfaction of the judge, do not go quite as far as the decisions I have mentioned go. All of these decisions, however, are violative of “our fundamental law,” as the court said, of State v. Ford, in State v. Kellogg, 104 La. 580, 29 So. 285, 294.
 

 These recent decisions, which are viola-tive of “our fundamental law,” ought to be overruled, as the decision in the Ford Case was overruled, in State v. Kellogg. There is no such doctrine as stare decisis to stand in the way of our correcting errors in the law of evidence in the trial of criminal cases.
 

 
 *811
 
 For these reasons I respectfully dissent from the prevailing opinion in this case, without expressing an opinion as to any other ruling in the case.