167 So.2d 346

**STATE of Louisiana**

v.

**Elmer ROWLAND.**

No. 47155.

July 1, 1964.

Rehearing Denied Oct. 7, 1964.

Harry F. Connick, James D. Johnson, Jr., New Orleans, for appellant.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for appellee.

FOURNET, Chief Justice.

The defendant, Elmer Rowland, having been convicted under a Bill of Information with having "unlawfull killed one John Stricker," and sentenced to serve three years at hard labor in the Louisiana state penitentiary, prosecutes this appeal, relying primarily for the reversal of this conviction and sentence on Bill of Exceptions No. 1, reserved when the trial judge sustained the state's objection to the in-

terrogation by defense counsel of several witnesses with respect to the "previous bad character and disposition of the deceased."

In his per curiam to this bill, the trial judge held that under R.S. 15:482, as amended, before evidence of·the dangerous character of the deceased could be admitted, he (the trial judge) must 1 ; satisfied "there was evidence of an overt act or hostile demonstration" on the part of the deceased or party injured, and concluded, after an analysis of the entire record and all of the exhibits the evidence was "insufficient" to show there was such act or demonstration on the part of the deceased.

The legislature of 1928, in codifying the law then in existence with respect to restriction on the use of evidence of threats or character of a party injured or killed in an altercation, adopted Article 482 of its Act No. 2 (Code of Criminal Procedure), which provides: "In the absence of *proof* of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible." This provision was carried in this identical language into the Revised Statutes of 1950 as R.S. 15:482. (The emphasis has been supplied.)

The jurisprudence under this article—"very rigid and less liberal than the common law states"—was that in the absence of proof of hostile demonstration or of an overt act on the part of the person slain or injured, evidence of his dangerous character or threats against the accused was not admissible; . further, that proof of such overt act or hostile demonstration had to be to the satisfaction of the trial judge. State v. Boudreaux, 185 La. 434, 169 So. 459.[1] This remained the rule of law universally followed by this court until the legislature of 1952, following the trial in the case of State v. Terry, 221 La. 1109, 61 So.2d 888, amended and re-enacted R.S. 15:482 by substituting in the place of the word "proof" as above underscored, the word "evidence."

Counsel for the defendant urge that the legislature, in thus amending the statute, intended to remove from the province of the trial judge the discretion he previously had with respect to the commission of an overt act or hostile demonstration, contending that where "a person on trial for manslaughter pleads self-defense, it is reversible error not to allow him to introduce evidence of previous threats on the part of the deceased, or of the dangerous character of the deceased, whenever there has been *any evidence at all* from which

---

1. See, also, State v. Jones, 175 La. 1066, 145 So. 9; State v. Thornhill, 188 La. 762, 178 So. 343; State v. Magee, 215 La. 675, 41 So.2d 499; State v. Terry, 221 La. 1109, 61 So.2d 888; and authorities therein cited.

the *jury* might decide that the deceased made a hostile demonstration or committed an overt act against the accused." (The emphasis has been supplied.)

The state, on the other hand, contends the legislature, in amending this statute, "was obviously attempting to bring Louisiana into line with other jurisdictions in this country in regard to the rule in homicide cases governing admissibility of evidence of the victim's dangerous character or of his threats against the accused," which had long been advocated by the late Chief Justice Charles A. O'Niell in all of his vigorous and celebrated dissenting opinions, notably in State v. ⸗hornhill, 188 La. 762, 178 So. 343, suggesting the word "evidence" in the article as amended should be construed to mean "evidence which has some credibility," as did the trial judge in the instant case, and in light of the procedural rule existing in other jurisdictions.

The legislature of 1942, in adopting its Act No. 43 creating the Louisiana Criminal Code, attempted in Articles 18–22 (now R.S. 14:18–22), dealing with the culpability of an accused, to provide for all possible situations in which "justification" or self-defense might be urged by an accused. The portions of these articles pertinent here—which, according to the comments thereunder, must be referred to in order to determine whether the ar-

ticles defining various crimes present conduct on the part of the offender that might, under the circumstances, be considered as "justified"—are as follows:

"The fact that an offender's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. This defense of justification can be claimed under the following circumstances:

\*　　\*　　\*　　\*　　\*　　\*

"(6) When any crime, except murder, is committed through the compulsion of threats by another of death or great bodily harm, and the offender reasonably believes the person making the threats is present and would immediately carry out the threats if the crime were not committed; \* \*." Article 18.

"The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession; provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this article shall not apply where the force or violence results in a homicide." Article 19.

"A homicide is justifiable:

"(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger; or

"(2) When committed, for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm, by one who reasonably believes that such an offense is about to be committed and that such action is necessary for its prevention. The circumstances must be sufficient to excite the fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing." Article 20.

 From the language used, as well as from the comments under these articles, it is obvious the lawmakers intended to provide that a person may use all reasonable and apparently necessary force or violence to prevent forceful and violent action against his person or property in his possession; further, that in order to be justified in taking the life of another, and thus able to avail himself of the plea of self-defense, the party accused must not only have a present and reasonable belief he is in imminent danger of losing his life, or receiving great bodily harm, but he must also reasonably believe it is necessary to kill in order to save himself.

We have carefully reviewed all of the defendant's testimony touching on the subject under consideration as given during the trial, and we find none that tends to show, or from which it can be logically deduced, that there was either a hostile demonstration or overt act on the part of the deceased toward the accused. While the defendant did state, as a witness in his own behalf during the trial, and as pointed out in argument supporting the Bill of Exceptions No. 1, "* * * I thought he was going to hit me with it (a pitcher), * * *" he, nevertheless, throughout, beginning with defendant's voluntary statements to police officers shortly after the altercation that resulted in Stricker's death and continuing even through the trial, definitely showed he was not in fear of violence or bodily harm from Stricker, but, instead, that the blow struck by him resulting in Stricker's death was activated by his (defendant's) loss of temper when Stricker "cursed" him. In fact, we think the final paragraph of the statement the defendant made to a police officer, taken down by the officer on a portable Norelco tape recording machine the afternoon of the day on which the incident occurred, and voluntarily signed by the defendant two days thereafter when reduced to writing and read back to him, epitomizes

the entire tenor of his testimony. In answer to the officer's question as to whether the deceased had, at any time, threatened him with a pitcher he had in his hand, the defendant replied: "No, sir. He did not threaten me. He did not say anything; whether he was going to hit me with the pitcher or not. He was only holding it up in front of him. As I said his intentions I do not know. What he aimed to do with the pitcher, whether he was going after water, or whether he aimed to hit me with it I do not know. The only thing I do know is that I let my temper run away with me because I was tired and sleepy and acted on the impulse of the spur of the moment which in a second later I was very sorry, which was one second too late."

We therefore conclude there is no merit to the first bill reserved by defense counsel.

The second bill is likewise without merit. As pointed out by the trial judge in refusing a new trial, which ruling forms the basis of this bill, the motion consists of nothing more than defense version of the testimony, evidence, and applicable law, asserted in its motion to show the "verdict rendered * * * was contrary to the law and the evidence in the case," and "that * * * the ruling of the Court that there was no overt act or hostile demonstration on the part of deceased"

was error "committed to the prejudice of the accused," and, consequently, under our jurisprudence, presents nothing for further consideration. In view of the conclusion we have reached under the first bill, this ruling is correct.

For the reasons assigned, the conviction and sentence are affirmed.